NOTICE

Decision filed 04/13/11. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-10-0382

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| KEELEY & SONS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-L-163 |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | Honorable |
| | ) | Lloyd A. Cueto, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WEXSTTEN delivered the judgment of the court, with opinion.
Presiding Justice Chapman and Justice Donovan concurred in the judgment and opinion.

**O P I N I O N**

The plaintiff, Keeley & Sons, Inc., filed a lawsuit against the defendant Zurich American Insurance Company, seeking to recover alleged overpayments of premiums in the total amount of $274,270 under two separate workers' compensation insurance policies issued by the defendant. According to the allegations in the plaintiff's complaint, it overpaid on these two policies due to the defendant's improper calculations of the premiums. Before us now is the defendant's interlocutory appeal challenging the trial court's denial of its amended motion to dismiss the plaintiff's complaint and compel arbitration. For the reasons discussed herein, we affirm.

BACKGROUND

The plaintiff is a construction company located in East St. Louis, Illinois. The defendant, an insurance company, issued the plaintiff two separate workers' compensation and employers' liability insurance policies (collectively, the Policies) for its operations. The

1

first policy, number WC 9308164-00 (the 00 Policy), provided coverage from December 31, 2002, through December 31, 2003. The second policy, number WC 9308164-01 (the 01 Policy), provided coverage from December 31, 2003, through December 31, 2004.

Pursuant to the Policies, all the premiums were to be determined by the defendant's manuals of rules, rates, rating plans, and classifications. Stated within the Policies, the final premium for each of the Policies was also to be determined by using "the actual, not the estimated, premium basis and the proper classifications and rates that lawfully applied to the business and work covered by [each of the Policies]."[1] Attached to the 00 Policy is an endorsement entitled "CONTINGENT EXPERIENCE RATING MODIFICATION FACTOR ENDORSEMENT," which states as follows:

"The premium for this policy will be adjusted by an experience rating modification factor. The factor shown in the schedule is a Contingent Experience Rating Modification factor based on the appropriate experience data available and replaces any prior experience modification factor. We will issue an endorsement to show a revised factor if appropriate additional experience data becomes available. The Contingent factor will apply unless a revised factor is subsequently used."

The schedule within the endorsement states that the applicable contingent experience rating modification factor was 1.77. Another endorsement is also attached to the 00 Policy; it is entitled "ILLINOIS MOD CHANGE" and reads as follows: "DUE TO THE ILLINOIS CONTINGENT MOD RULES, THE ILLINOIS MOD EFFECTIVE 12-31-02 IS AMENDED TO 1.00 FOR THIS POLICY. THE RETURN PREMIUM IS SUBJECT TO

---

[1]The court notes that although the 00 Policy does not contain this standard form language, the record reveals the plaintiff's assertion that this standard language is also a part of the 00 Policy because of several endorsements which modified the standard form language.

2

AUDIT AND DEFERRED TO THE RETRO CALCULATION."

The 01 Policy contains an endorsement somewhat similar to the two endorsements attached to the 00 Policy. It is entitled "CHANGES" and reads, in pertinent part, as follows: "THE POLICY HAS BEEN AMENDED AS FOLLOWS: ENDORSEMENT #1 HAS BEEN AMENDED TO READ: THE ILLINOIS EXPERIENCE MOD IS AMENDED TO 1.00. THE MISSOURI EXPERIENCE MOD IS AMENDED TO 1.82. RETURN PREMIUM SUBJECT TO AUDIT."

However, according to the plaintiff's allegations, the defendant improperly applied an experience rating modification factor of 1.77 for the 00 Policy with respect to the plaintiff's Illinois portion of the risk, increasing its premium calculation by $315,402.[2] Therefore, after the retrospective calculation on the 00 Policy was made, the plaintiff's total premium for that policy equaled $351,943. Thus, the plaintiff alleges that had the defendant applied the correct experience rating modification factor of 1.00, its total premium for the 00 Policy after the retrospective calculation was applied should have been $216,029, thereby resulting in an excess paid premium of $147,794.

Similarly, the plaintiff also alleges that the defendant improperly applied an experience rating modification factor of 1.75 to the 01 Policy, thereby increasing the total premium by $248,734. Accordingly, after the application of the retrospective calculation, the total premium for the 01 Policy was $295,110. Yet the plaintiff alleges that had the defendant applied the correct experience rating modification factor of 1.00, the total premium due for the 01 Policy after the retrospective calculation should only have been $168,634,

_____

[2]In its complaint, the plaintiff states that the classification schedule attached to the 00 Policy and the 01 Policy actually shows the defendant's application of the incorrect experience modification factor used to calculate the total premium due on each of the Policies.

3

thereby resulting in an excess paid premium of $126,476. That alleged overcharge and the retention of the plaintiff's overpayments give rise to the plaintiff's causes of action for a breach of contract on each of the Policies.[3]

As the defendant points out on appeal, the allegations in the plaintiff's complaint refer to the "retrospective calculation" applied to the total premiums for each of the Policies. Explaining, the defendant states that the Policies were retrospectively rated, meaning that the plaintiff's actual premiums on the Policies were to be determined based on actual losses that may develop over time. According to the defendant, the reason for doing so was that, during the effective period of coverage for each of the Policies, the actual attributable experience was not yet known. Therefore, during the period of coverage applicable to each of the Policies, the plaintiff paid what was called a "standard premium" (previously referred to in this opinion as "premium" or "total premium"), which, the defendant asserts, is essentially an estimate of the actual final retrospective premium. At the end of the coverage period and periodically thereafter, the defendant was to calculate the actual retrospective premium attributable to the program year according to a formula that took into account the actual claims made and paid on the Policies. Thus, if the standard premium already paid by the plaintiff was less than the actual final retrospective premium (*i.e.*, if the actual claims experience had been underestimated), then the plaintiff was to pay the difference to the defendant. Conversely, if the standard premium turned out to be greater than the actual final retrospective premium (*i.e.*, if the parties had overestimated what the actual claims

---

[3]In addition to the two counts for a breach of contract, the plaintiff also pleads a count for the defendant's alleged violation of section 462b of the Illinois Insurance Code (215 ILCS 5/462b (West 2008)). The plaintiff also pled a count for the defendant's alleged violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2008)) but agreed to voluntarily dismiss the latter count prior to this appeal.

4

experience would be), then the defendant would refund the difference back to the plaintiff.

The retrospective calculation and the resulting retrospective premium for each of the Policies do not stem from the Policies themselves, however. Rather, applicable to each Policy is a related agreement, subsequently entered into by the parties, each entitled "Incurred Loss Retrospective Rating Agreement." The purpose behind the Incurred Loss Retrospective Rating Agreements is to outline the scope, description, and structure of the Incurred Loss Retrospective Rating Program (the Program) entered into between the plaintiff and the defendant and to outline the duties and obligations of each party with respect to this Program. The Incurred Loss Retrospective Rating Agreements each consist of a terms-and-conditions portion and a specifications portion. Determining the retrospective premium applicable to each of the Policies, via the retrospective calculation, requires the use of a formula that includes, among other values, a component called "Basic," which, the defendant asserts, is itself a percentage of the standard premium.[4] Also in accordance with each of the

---

[4]We note, however, that within the definitions section of the Incurred Loss Retrospective Rating Agreement, "Basic Premium" is simply defined as "an amount representing [the defendant's] expenses under the Program." It is unclear how the basic premium is therefore a percentage of the standard premium. In fact, the plaintiff argues that, contrary to the defendant's assertion, the standard premium does not constitute a factor or variable within the formula used to calculate the retrospective premium. Instead, the plaintiff asserts that the standard premium only serves to set the "Minimum" and "Maximum" retrospective premium determined via the retrospective calculations. Upon review, we find that the specifications portion of the Program states that the minimum retrospective premium is equal to 50% of the standard premium and that the maximum retrospective premium can be no greater than 1.75 times the standard premium. The specifications do not further mention the standard premium, nor do they define the term "Basic" as used in its

5

Incurred Loss Retrospective Rating Agreements, the standard premium was used to calculate both the ceiling value and the floor value above and below which the retrospective premium could not surpass.

Within each Incurred Loss Retrospective Rating Agreement was an arbitration clause (the arbitration clause) that reads, in pertinent part, as follows:

"Any dispute arising out of the interpretation, performance or alleged breach of this Agreement[] shall be settled by binding arbitration administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules and the following procedures: ***."

In response to the plaintiff's complaint, the defendant filed an amended motion to dismiss the complaint and to compel arbitration, asserting that the arbitration clause found in the Incurred Loss Retrospective Rating Agreements should apply to the plaintiff's claims. Although the plaintiff chose to sue for the breach of only the Policies themselves and did not further claim that the defendant breached the Incurred Loss Retrospective Rating Agreements, the defendant argued that because both agreements were necessary to determine the plaintiff's alleged damages, the arbitration clause was triggered. In support of its assertion, the defendant noted that the plaintiff's allegations even state that it overpaid on its retrospective premiums. In short, the defendant believed that the plaintiff's claims not only involved the Policies but also implied causes of action on the Incurred Loss Retrospective

retrospective rating formula.

Yet the term "Standard Premium" is defined within the definitions section of the Incurred Loss Retrospective Rating Agreement as being "calculated in accordance with the National Council on Compensation Insurance and/or specific state rules using [o]ur manual rates times the exposure times the experience modification times schedule rating modification and/or deviations, if applicable."

6

Rating Agreements. Further, because the defendant believed that the arbitration clauses in the Incurred Loss Retrospective Rating Agreements were "generic" and contained broad language, it argued that under Illinois law, when two agreements relate to the same subject matter and one of the documents contains a generic arbitration clause, the parties must arbitrate any dispute arising out of the overall subject matter of the agreements.

The trial court did not agree with the defendant's position and denied the motion, finding that because the plaintiff chose to sue under only the Policies, which do not contain arbitration clauses, and because the language of the arbitration clauses in the Incurred Loss Retrospective Rating Agreements was "limited," that ambiguous and limiting language should be construed against the drafter (the defendant). Thus, the trial court did not believe that it should extend the reach of the arbitration clauses by construction or implication. After the trial court's denial of its motion, the defendant pursued this interlocutory appeal, made pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010).

ANALYSIS

The issue on appeal is whether the arbitration clause found in each of the Incurred Loss Retrospective Rating Agreements encompasses the plaintiff's breach-of-contract claims on the Policies, neither of which contains an arbitration clause, so that the parties must be compelled to arbitrate. Alternatively, should we find the language of the arbitration clause to be ambiguous in its application to the plaintiff's claims, the issue then becomes whether Illinois law requires an arbitrator, rather than a court, to decide whether the subject matter of a dispute falls within the scope of the arbitration clause.

While the trial court did conduct a hearing on the defendant's amended motion to dismiss and to compel arbitration, because it did not hear evidence before ruling on the motion, our review of this appeal is *de novo*. See *Schmitz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 405 Ill. App. 3d 240, 244 (2010). The parties do not dispute this standard of

7

review.

"[P]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate ***." *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94 (1968). A court should determine as soon as practicable the issue of whether a matter in dispute is within the scope of an arbitration agreement. *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.*, 119 Ill. App. 3d 663, 670 (1983). An exception to the "clear language" general principle for arbitration agreements exists when an arbitration clause is deemed to be "generic," meaning that it is "nonspecific in its designation of arbitrable disputes." *Ozdeger v. Altay*, 66 Ill. App. 3d 629, 631-32 (1978). "Arbitration clauses that provide that all claims 'arising out of' or 'relating to' an agreement [shall be decided by arbitration] have been properly categorized as 'generic' arbitration clauses." *A.E. Staley Manufacturing Co. v. Robertson*, 200 Ill. App. 3d 725, 729 (1990) (citing *J&K Cement Construction, Inc.*, 119 Ill. App. 3d at 670). To determine the scope of a generic arbitration clause, a court should examine the wording of the clause along with the terms of the contract in which the clause is found. *Ozdeger*, 66 Ill. App. 3d at 632.

The defendant cites the *A.E. Staley Manufacturing Co.* case for the proposition that when two agreements relate to the same subject matter so that they must be read in conjunction with each other to get the full scope of the contract, and one of the agreements contains a valid generic arbitration clause, then any dispute arising out of the overall subject matter of the agreements is subject to arbitration. *A.E. Staley Manufacturing Co.*, 200 Ill. App. 3d at 730-31. Here, the defendant argues not only that the arbitration clause found within each of the Incurred Loss Retrospective Rating Agreements is generic but that the plaintiff's claims for a breach of the Policies are within the scope of the arbitration clauses because the Incurred Loss Retrospective Rating Agreements must be read in conjunction with the Policies to define the complete parameters of the overall insurance program. Countering,

8

the plaintiff believes that the language of the arbitration clause in the Incurred Loss Retrospective Rating Agreements is more limiting than suggested by the defendant, so that disputes arising out of other contracts, such as the Policies, do not fall within their scope. Moreover, the plaintiff does not believe the language of the arbitration clauses to be "generic," as the defendant asserts. Rather, the plaintiff argues that the arbitration clause is limited to the Incurred Loss Retrospective Rating Agreement and that it is triggered only by matters dealing with the interpretation, performance, or breach of the applicable Incurred Loss Retrospective Rating Agreement.

Examining the language of the arbitration clause and germane case law, we partially agree with the defendant and find it to be a "generic" arbitration clause. The language of the arbitration clause states, "Any dispute arising out of the interpretation, performance or alleged breach of this Agreement[] shall be settled by binding arbitration ***." While the plaintiff is correct in its observation that the language of the clause *specifically* designates that arbitration will be triggered upon disputes regarding the interpretation, performance, or alleged breach of the agreement, the defendant is also correct in arguing that rather than being limiting language, the language describing these triggering events "denote[s] the full breadth of the types of disputes that can conceivably arise" from the Incurred Loss Retrospective Rating Agreements. See, *e.g.*, *A.E. Staley Manufacturing Co.*, 200 Ill. App. 3d at 728, 730 (finding the following arbitration clause to be generic: " 'Any controversy or claim arising out of or relating to this Agreement, or any breach hereof ***' "); *Ozdeger*, 66 Ill. App. 3d at 630-31 (finding the following arbitration clause to be generic: " 'All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof ***' "); *Roosevelt University v. Mayfair Construction Co.*, 28 Ill. App. 3d 1045, 1049, 1056-57 (1975) (finding the following arbitration clause to be generic: " 'All claims, disputes and other matters in question arising out of, or relating to this Contract or

9

the breach thereof ***' ").  Therefore, although the arbitration clause could have contained language even more generic in nature, such as by simply stating "any matters or disputes arising out of this agreement," we find the language as it is to be sufficiently broad in scope to be deemed generic in its application.

Though we may find the language of the arbitration clause to be generic, we disagree with the defendant's assertion that the scope of the arbitration clause thereby reaches to disputes involving matters arising from other contracts, such as the Policies.  Instead, the language of the arbitration clause clearly states that the triggering events must arise from "*this* Agreement" (emphasis added), meaning the applicable Incurred Loss Retrospective Rating Agreement itself.  The defendant incorrectly posits that an arbitration clause deemed "generic" necessarily reaches disputes arising out of another agreement involving similar subject matter.  However, the case cited by the defendant for that proposition, namely, the *A.E. Staley Manufacturing Co.* case, is distinguishable.  In *A.E. Staley Manufacturing Co.*, the language of the arbitration clause at issue not only included the phrase "arising out of" but also contained the important phrase "or relating to [the agreement containing the arbitration clause]." *A.E. Staley Manufacturing Co.*, 200 Ill. App. 3d at 728.  When the language of a particular arbitration clause is generic and contains the phrase "arising out of this agreement" (or a variation thereof) but fails to also contain the phrase "or relating to" (or a variation thereof), then arbitration should properly be limited to the specific terms of the contract or agreement containing the arbitration clause.  See *Ozdeger*, 66 Ill. App. 3d at 632 ("Where the arbitration clause in the contract pertains to 'all disputes in connection with' the contract, this court has held that the scope of the clause is limited to the specific terms of the contract.") (citing *Silver Cross Hospital v. S.N. Nielsen Co.*, 8 Ill. App. 3d 1000, 1001 (1972) (where the arbitration clause stated, " 'It is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration ***' "), and *Harrison F.*

10

*Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.*, 109 Ill. App. 2d 224, 228 (1969) (where the arbitration clause required parties to arbitrate " 'all disputes arising in connection with this contract' ")); see also *Roosevelt University*, 28 Ill. App. 3d at 1056 (finding that the language of the arbitration clause at issue, which contained the phrase "or relating to" was "broader than the scope of the generic arbitration provision in *Blades*," which did not contain the phrase "or relating to").

Accordingly, because we find the language of the arbitration clause at issue to be generic but only applicable to matters arising out of the Incurred Loss Retrospective Rating Agreements, the question now becomes whether the plaintiff's claims for a breach of the Policies arise not only from the defendant's alleged breach of the Policies but also from the "interpretation, performance or alleged breach of" the Incurred Loss Retrospective Rating Agreements, in order to trigger the arbitration clause. Naturally, the defendant believes that the plaintiff's dispute lies not only with the alleged improper calculation of its standard premium under the Policies but also, ultimately, with the calculation of the final retrospective premiums paid. In support, the defendant relies heavily upon certain allegations within the plaintiff's complaint which state both the total premium paid on each of the Policies after the retroactive calculation was applied and the total premium on the Policies that *should* have been paid after the retroactive calculation was applied, had the defendant used the *correct* experience rating modification factor of 1.00. As the defendant points out, the Incurred Loss Retrospective Rating Agreements set forth the method of calculating the retrospective premiums. Thus, the defendant advocates that the arbitration clause should be triggered because the plaintiff's claims involve a dispute concerning the "interpretation, performance or alleged breach of" the Incurred Loss Retrospective Rating Agreements, despite the plaintiff's artful attempt to plead around these agreements in order to avoid arbitration. Opposing, the plaintiff contends that the Incurred Loss Retrospective Rating Agreements are

11

irrelevant to its complaint and that the resolution of its claims will not require the court to interpret these agreements. Regarding its allegations which discuss the retrospective calculation, the plaintiff explains that its dispute concerns the value of the experience modification factor and not the retrospective premium. Continuing, the plaintiff states that the experience modification factor is a variable associated with the calculation of the standard premium under the Policies and is determined by the terms of the Policy and the defendant's corresponding manuals. In other words, the plaintiff asserts that the experience modification factor is not impacted by the Incurred Loss Retrospective Rating Agreements. Further, the plaintiff states that it has no dispute with any of the factors governed by the Incurred Loss Retrospective Rating Agreements. It was, according to the plaintiff, essential to allege the value of the recalculated retrospective premiums on both of the Policies because the standard premium is used as a measure of the minimum and maximum retrospective premium. Therefore, the plaintiff believes that a change in the standard premium once the allegedly correct experience modification factor is applied will necessarily require a recalculation under the Incurred Loss Retrospective Rating Agreements as well.

Considering the parties' respective arguments and reviewing the language of the Policies and the Incurred Loss Retrospective Rating Agreements, we find that the plaintiff's claims for the breach of the Policies do not also amount to a dispute arising out of the Incurred Loss Retrospective Rating Agreements. First, we must respect the traditional notion that the plaintiff is the master of his complaint, thereby free to choose his own theory of liability so long as the evidence supports it. See *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 59 (2007); *Reed v. Wal-Mart Stores, Inc.*, 298 Ill. App. 3d 712, 718 (1998); *Topps v. Ferraro*, 235 Ill. App. 3d 43, 52 (1992). Here, the plaintiff chose not to bring a cause of action for a breach under the Incurred Loss Retrospective Rating Agreements. Instead, the plaintiff's theory of liability against the defendant hinges upon its allegations that the

12

defendant breached the Policies by using the incorrect experience modification factor. The application of this incorrect factor therefore allegedly increased the standard premium that the plaintiff owed to the defendant on each of the Policies. The standard premium is calculated via terms of the Policies. The supporting evidence relied upon by the plaintiff to evince the defendant's application of the incorrect experience modification factor is contained within the Policies, not the Incurred Loss Retrospective Rating Agreements.

In this instance, we believe that the retrospective premium is merely a by-product of the allegedly miscalculated standard premium due the defendant's breach of contract. The mention of it in the plaintiff's complaint is necessary to give an accurate assessment of the final amount of damages alleged. It should not, however, be confused with the actual dispute integral to the plaintiff's alleged injury. Rather, the alleged "recalculation" of the retrospective premiums is more appropriately regarded as the plaintiff's acknowledgment of what is essentially a "mitigation" of the monetary damages it claims it is owed by the defendant. In so many words, the plaintiff is basically claiming that it overpaid $315,402 on the 00 Policy and $248,734 on the 01 Policy but that, due to the subsequent determination of the retrospective premium, it is actually only owed $147,794 on the 00 Policy and $126,476 on the 01 Policy (for a total damages amount of $274,270).

In sum, because we find the arbitration clause in the Incurred Loss Retrospective Rating Agreements to be generic in scope but only applicable to disputes arising out of the Incurred Loss Retrospective Rating Agreements themselves, the plaintiff is not compelled to arbitrate its claims for a breach of the Policies, because the claims do not impliedly allege arbitrable disputes. Further, because we find neither the language nor the application of the arbitration clause to be ambiguous or vague in its meaning and scope, there is no need to consider the defendant's alternate issue on appeal, regarding whether an arbitrator, rather than a court, should thereby decide whether the subject matter of a dispute falls within the

13

scope of the arbitration clause, as discussed in *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435 (1988).

CONCLUSION

For the reasons discussed herein, upon our *de novo* review of the defendant's interlocutory appeal of the denial of its amended motion to dismiss the plaintiff's complaint and to compel arbitration, we find that the scope of the arbitration clause at issue did not reach the plaintiff's causes of action, as pled in its complaint, to trigger the clause. Thus, we hereby affirm the trial court's denial of the defendant's amended motion to dismiss the plaintiff's complaint and to compel arbitration.


Affirmed.

NO. 5-10-0382

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| KEELEY & SONS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 10-L-163 |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY | ) | Honorable |
| | ) | Lloyd A. Cueto, |
| Defendant-Appellant. | ) | Judge, presiding. |

**Opinion Filed**: April 13, 2011

**Justices**: Honorable James M. Wexstten, J.

Honorable Melissa A. Chapman, P.J., and
Honorable James K. Donovan, J.,
Concur

**Attorneys for Appellant**: Michael J. Nester, Donovan, Rose, Nester & Joley, P.C., 8 East Washington Street, Belleville, Illinois 62220; Steven T. Whitmer/Hugh S. Balsam/Bryan W. Deaton, Locke, Lord, Bissell & Liddell, LLP, 111 South Wacker Drive, Chicago, IL 60606

**Attorney for Appellee**: Charles L. Philbrick, Rathje & Woodward, LLC, 300 East Roosevelt Road, Suite 300, Wheaton, IL 60187