2015 IL App (2d) 141160
No. 2-14-1160
Opinion filed April 30, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| EDWARD M. FIALA, JR., | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13-L-635 |
| | ) | |
| BICKFORD SENIOR LIVING GROUP, LLC, | ) | Honorable |
| | ) | James R. Murphy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Zenoff and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Bickford Senior Living Group, LLC, appeals the judgment of the circuit court of Kane County denying its motion to dismiss the second amended complaint of plaintiff, Edward M. Fiala, Jr., and compel arbitration. Defendant argues that plaintiff's daughter, Susan Kahanic, acting as his attorney-in-fact under a health-care power of attorney, had the power to enter into a contract for plaintiff's medical care and to bind plaintiff to arbitrate disputes arising out of the agreement. Defendant also argues that the claims in plaintiff's complaint fall within the scope of the arbitration provision in question. We determine that plaintiff was validly bound to the arbitration provision by his attorney-in-fact and that his claims are within the scope of the arbitration provision, and thus we reverse the trial court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3     On December 17, 2013, plaintiff filed a complaint against defendant alleging violations of the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2012)) and common-law claims, including battery, false imprisonment, intentional infliction of emotional distress, and civil conspiracy.  We summarize plaintiff's allegations.

¶ 4     From October 2012 through August 2013, plaintiff (along with his wife) resided in a long-term-care facility owned and operated by defendant and located in St. Charles.  Plaintiff alleged that, because defendant's staff considered him to be a burdensome resident who required a lot of attention, he would be placed overnight into "Mary B's" area, where he would receive Paxil and other unknown drugs.  Plaintiff was experiencing a condition similar to Parkinson's disease, and Paxil was contraindicated for that condition.  The administration of Paxil and other drugs was without his prior consent, and the placement apart from his wife was against his and her express wishes.  Plaintiff alleged that the administration of the drugs, and Paxil in particular, violated the medical instructions in his chart.  The drugs reduced his quality of life, caused him fear and confusion, and caused deterioration in his physical condition, and the manner in which they were administered (by removing plaintiff from his apartment) as well as the soporific effects caused a loss of society with his wife.

¶ 5     Plaintiff also alleged that one of defendant's employees entered his apartment without permission and stole items from him and his wife.  According to plaintiff, defendant was aware of the employee's identity and actions (as the employee had not limited his activities to plaintiff's apartment), but defendant did nothing to stop the thief.

¶ 6     On March 10, 2014, defendant filed a motion to dismiss the complaint and to enforce the arbitration agreement included in the assisted-living establishment contract (establishment

contract) that Kahanic executed on his behalf pursuant to the health-care power of attorney. In the motion to dismiss, defendant made the following pertinent allegations. On October 8, 2012, plaintiff executed an Illinois statutory short-form power of attorney for health care appointing Kahanic as his attorney-in-fact and agent authorized to make decisions for plaintiff. The power of attorney provided pertinently that Kahanic was appointed:

"as [his] attorney-in-fact ([his] 'agent') to act for [him] and in [his] name (in any way [he] could act in person) to make any and all decisions for [him] concerning [his] personal care, medical treatment, hospitalization, and health care and to require, withhold or withdraw any type of medical treatment or procedure, even though [his] death [may] ensue."

Moreover, the power of attorney provided that it "shall become effective on *** (a) the date of execution hereof."

¶ 7 Upon being admitted to defendant's assisted-living facility, plaintiff, through Kahanic as attorney-in-fact, executed the establishment contract, setting forth the obligations and duties of plaintiff and defendant during plaintiff's residence at the facility. The establishment contract obligated defendant:

"[t]o provide designated services to [plaintiff], as delineated in the Service Agreement. These services provided by certified and trained assistants shall include: three meals per day including snacks, housekeeping services, laundry services and maintenance services. Also available to [plaintiff] is oversight/supervision of medications, assistance with bathing, (Residents get a standard of 2 baths per week), dressing assistance with ambulation and ambulatory devices, and transferring from wheelchairs when such assistance is needed. Skilled Nursing services are excluded. However, arrangements

may be made for these to be provided by a Medicare certified Home Health agency."

¶ 8    The establishment contract also included a "Binding Arbitration Provision." The arbitration provision provided:

> "Any controversy, claim or dispute arising out of or relating to this Establishment Contract or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its rules and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The award of the arbitrator(s) shall be final and binding upon the parties without the right of appeal to the courts. The arbitrators will have no authority to award punitive damages or any other damages not measured by the prevailing party's actual damages, and may not, in any event, make any ruling, finding or award that does not conform to the terms and conditions of the Contract. The parties shall each bear its own costs and expenses and an equal share of the arbitrators' and administrative fees of arbitration."

We note that the arbitration provision was an integral part of the establishment contract. In other words, a prospective resident's agreement to the arbitration provision (and the other provisions of the establishment contract) was required in order to secure admission into defendant's facility.

¶ 9    Included with the motion to dismiss was an affidavit purporting to state facts that showed that the establishment contract involved interstate commerce. Defendant suggests that the affidavit was included to bring the establishment contract within the Federal Arbitration Act (9 U.S.C. § 1 *et seq.* (2000)), which, according to defendant, would provide an additional and independent basis to enforce the contract.

¶ 10    On May 29, 2014, the trial court denied defendant's motion to dismiss. In doing so, the trial court noted that the power of attorney that was attached as an exhibit to defendant's motion

was not complete. The trial court also determined that the contract was insufficient because it did not appear to have been executed on behalf of plaintiff; rather, Kahanic endorsed the contract in a way that indicated that she had read it but not executed it.

¶ 11    On June 4, 2014, defendant filed a motion to reopen the proofs on its motion to dismiss. Defendant attached the complete power of attorney executed by plaintiff and Kahanic, which included the portion omitted from the original exhibit attached to the motion to dismiss. On September 12, 2014, the trial court allowed defendant to supplement the record with the complete power of attorney.

¶ 12    On October 27, 2014, the parties again argued the motion to dismiss. Following the argument, the trial court denied the motion to dismiss. This time, the trial court determined that Kahanic was plaintiff's agent pursuant to the health-care power of attorney. The establishment contract included in its provisions a rental agreement and a service agreement that included medical services. The court further determined that the establishment contract also included the arbitration provision, which required that "[a]ny controversy, claim or dispute arising out of or relating to" the establishment contract "be settled by arbitration." The court held that Kahanic "did have the authority," under the power of attorney, "to sign the Establishment Contract and the included arbitration agreement here in question and the arbitration agreement would be binding on the principal, provided the agreement were invoked in relation to the contract itself, or breach of the contract, or on issues of payment."

¶ 13    Having set the stage, the trial court held that the "language in this particular arbitration agreement does not provide broadly *** that the parties shall submit 'all disputes against each other' or 'any disputes concerning whether any statutory provisions relating to the Resident's rights under Illinois law were violated,' " citing *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30

(2010). The trial court additionally held that the language of the arbitration provision did not "provide for arbitration of 'any dispute arising out of the diagnosis, treatment, or care of the Resident,' " citing *Fosler v. Midwest Care Center II, Inc.*, 398 Ill. App. 3d 563 (2009). Thus, the trial court held that the arbitration provision was not a broad and generic provision with a wide scope but was limited narrowly to the terms of the establishment contract. Applying this holding, the trial court reasoned that "the arbitration agreement was validly made, at least on those issues on which the agent under a [health-care power of attorney] has authority, *i.e.*, issues related to arranging for health care and residential placement in a health care facility and the payment therefor." The trial court then held that Kahanic "did not have the authority to agree to arbitrate any other matters related to finances or property rights of [plaintiff]. Further, the claims made by plaintiff do not involve the establishment contract, or breach thereof, and are therefore not included within the scope of the arbitration clause."

¶ 14    Turning to defendant's contention that the arbitration provision was valid under the Federal Arbitration Act, the court held that "the questions of whether the agreement for arbitration was validly made; and whether the arbitration agreement applies to the dispute at hand are questions that are governed by state law and are, in this case, to be resolved by the court in the first place, and not the arbitrator." The court thus denied the motion to dismiss. Defendant timely appeals.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, defendant presents three issues. First, defendant argues that plaintiff's claims are within the arbitration provision of the establishment contract. Second, defendant argues that the health-care power of attorney authorized Kahanic to bind plaintiff to the arbitration provision. Last, and alternatively, defendant argues that the Federal Arbitration Act provides an

independent basis by which to enforce the arbitration provision. We consider each argument in turn.

¶ 17    Preliminarily, however, we address our standard of review. This case arose from the trial court's denial of a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)). We review *de novo* the trial court's decision on a motion to dismiss pursuant to section 2-619. *Nelson v. Kendall County*, 2014 IL 116303, ¶ 22. Likewise, the scope of the arbitration provision presents a question of contract interpretation, and this is also reviewed *de novo*. *Westlake Financial Group, Inc. v. CDH-Delnor Health System*, 2015 IL App (2d) 140589, ¶ 11. The effect of the health-care power of attorney presents an issue of both contract and statutory interpretation, both of which are reviewed *de novo*. *Id.* (contract interpretation); *Nelson*, 2014 IL 116303, ¶ 22 (statutory interpretation). Finally, we note that the parties agree that our review of the issues presented in this case is *de novo*.

¶ 18                    A. Scope of the Arbitration Provision

¶ 19    It is a fundamental tenet of Illinois law that the parties are bound to arbitrate only those issues they have clearly agreed to arbitrate. *Keeley & Sons, Inc. v. Zurich American Insurance Co.*, 409 Ill. App. 3d 515, 520 (2011). Where an arbitration clause is "generic," meaning that it is nonspecific in designating the arbitrable issues, the court is required to examine the wording of the arbitration clause along with the other terms of the contract in which the arbitration clause is found. *Id.* at 520-21. A "generic" arbitration clause is characterized by language providing that all claims arising out of or relating to the contract at issue shall be decided by arbitration. *Id.* at 520. By contrast, where an arbitration clause contains the phrase, "arising out of the agreement" (or a variation thereof), but fails to also include the phrase, "or relating to [the agreement]" (or a variation thereof), it is narrower than a generic clause, and any arbitration should be limited to

the specific terms of the contract or agreement containing the arbitration clause. *Id.* at 522. With these principles in mind, we turn to the language of the arbitration provision at issue here.

¶ 20    In this case, the arbitration provision states: "[a]ny controversy, claim or dispute arising out of or relating to the Establishment Contract, or the breach thereof, shall be settled by arbitration." In the trial court's view, this was not a generic arbitration clause. Specifically, the trial court held that the "language in this particular arbitration [clause] does not provide broadly" and that "the claims made by plaintiff do not involve the establishment contract, or breach thereof, and are therefore not included within the scope of the arbitration clause."

¶ 21    The trial court's view of the scope of the arbitration provision is clearly in error. The arbitration provision includes the language, "[a]ny claim *** arising out of or relating to" the establishment contract. This language clearly denominates the arbitration provision as "generic," and generic arbitration provisions are broadly construed. *Id.* at 520-21. We now turn to the terms of the establishment contract.

¶ 22    The establishment contract provides that the following services were available to the resident: "oversight/supervision of medications, assistance with bathing, *** dressing, assistance with ambulation and ambulatory devices, and transferring from wheelchairs when such assistance is needed." The establishment contract further provides that the resident "may receive assistance with monitoring health care, ordering supplies/supplemental services, arranging medical care, assistance with medication, bowel and bladder management, night time care, personal hygiene, bathing, dressing, ambulation, eating, orientation, communication, counseling, behavior management, socialization, monitoring of safety, and transportation." Both of the quoted provisions from the establishment contract deal with the issue of a resident's medication. Plaintiff's complaint alleged that plaintiff was given Paxil and other unknown medications that

were not included in his medical chart, so this allegation would appear to be squarely within the contemplation of the establishment contract and, therefore, within the arbitration provision. Indeed, plaintiff concedes on appeal that the establishment contract obligated defendant to provide "designated services," including "supervision of medication" and "[a]rranging medical care." It seems, then, that both plaintiff and defendant agree on what the language of the contract called for, even if plaintiff continues to dispute that his claims fall within the scope of the arbitration provision. Accordingly, we hold that, based on the allegations underpinning plaintiff's claims, those claims arise out of or are related to the establishment contract, because they cover services that were to be provided by defendant to plaintiff as a result of the execution of the establishment contract.

¶ 23 Plaintiff argues that the establishment contract did not contain an "agreement to arbitrate claims for damages arising from defendant's violation of the Nursing Home Care Act, *** or claims for damages under common law theories of liability." This is too formalistic a view. Plaintiff alleged that defendant, under the guise of supervising and assisting him with medications, gave him Paxil and other unknown medications in order to sedate him and to chemically control him while he was in defendant's care. The establishment contract included terms obligating defendant to assist plaintiff with taking medication. The conduct complained of arises out of or is related to these terms; therefore, plaintiff's claims based on that conduct also arise out of or are related to the terms of the establishment contract. Accordingly, we reject plaintiff's argument.

¶ 24 Plaintiff contends that the establishment contract was concerned with his renting space and receiving designated services from defendant. According to plaintiff, these objects do not relate to either plaintiff's claims or the conduct complained of. We disagree. Among the

designated services are assistance with and supervision of medications; defendant is alleged to have mismedicated plaintiff. This conduct pertains to a designated service and so is included in the scope of the arbitration provision.

¶ 25    Plaintiff complains that a case cited by defendant does not support this interpretation. In its brief, defendant relies on *Carter*, 237 Ill. 2d 30. The agreement at issue in that case specifically provided that the arbitration provision's scope included "any disputes concerning whether any statutory provisions relating to the Resident's rights under Illinois law were violated." (Internal quotation marks omitted.) *Id.* at 33. Plaintiff argues that this specificity is absent from the establishment contract, so the alleged violations of the Nursing Home Care Act are outside of the arbitration provision here. We disagree. Again, the conduct complained of, namely, the administration of improper medications to plaintiff, pertains to a designated service agreed to by the parties; therefore, the allegations of misconduct fall within the scope of the arbitration provision.

¶ 26    Plaintiff also contends that the arbitration provision in this case lacks the specificity of the arbitration clause in *Fosler*, 398 Ill. App. 3d 563. In *Fosler*, the arbitration clause stated that "any dispute between you and us and any dispute relating to services rendered for any condition, and any dispute arising out of the diagnosis, treatment, or care of the Resident, including the scope of this arbitration clause and the arbitrability of any claim or dispute," shall be resolved by arbitration. (Internal quotation marks omitted.) *Id.* at 565-66. The language of the arbitration clause in *Fosler* is sufficiently different to render it inapposite. Further, it is precisely because an arbitration provision is nonspecific that it is labeled "generic" and given broad interpretation. *Keeley*, 409 Ill. App. 3d at 520. Accordingly, we reject plaintiff's arguments.

¶ 27   Having examined the principles of interpreting an arbitration clause, and having determined that the clause here is generic, we hold that the trial court erred in holding that the conduct complained of in plaintiff's complaint was outside of the scope of the arbitration provision of the establishment contract.  We now turn to the contention that Kahanic exceeded her authority under the health-care power of attorney in purporting to bind plaintiff to arbitration of any claims or disputes arising out of or related to the establishment contract.

¶ 28                       B. Authority under the Power of Attorney

¶ 29   Defendant next contends that Kahanic was authorized, under the health-care power of attorney, to execute the establishment contract, including the arbitration provision, and that she validly bound plaintiff to arbitrate any claims or disputes arising out of or relating to the establishment contract.  Defendant argues that, under the Powers of Attorney for Health Care Law (Power of Attorney Law) (755 ILCS 45/4-1 *et seq.* (West 2012)), and specifically section 4-10(c)(3) (755 ILCS 45/4-10(c)(3) (West 2012)), the power of attorney executed by plaintiff and Kahanic empowered Kahanic, as plaintiff's agent and attorney-in-fact, to stand in the shoes of plaintiff and to do anything necessary that related to plaintiff's health care, including entering into a contract, containing an arbitration provision, that placed plaintiff into an assisted-living facility.  Plaintiff, by contrast, characterizes the establishment contract as a rental and services agreement and argues that the Power of Attorney Law allows an agent to make only health-care-related decisions and any incidental decisions that are reasonably necessary to accomplish payment for the costs incurred from the health-care-related decisions.  To resolve the parties' arguments, we first turn to the pertinent language of the Power of Attorney Law.

¶ 30   The legislative purpose of the Power of Attorney Law is to recognize:

"the right of the individual to control all aspects of his or her personal care and medical treatment, including the right to decline medical treatment or to direct that it be withdrawn, even if death ensues. The right of the individual to decide about personal care overrides the obligation of the physician and other health care providers to render care or to preserve life and health.

However, if the individual becomes disabled, her or his right to control treatment may be denied unless the individual, as principal, can delegate the decision making power to a trusted agent and be sure that the agent's power to make personal and health care decisions for the principal will be effective to the same extent as though made by the principal." 755 ILCS 45/4-1 (West 2012).

Thus, the Power of Attorney Law is intended to allow an individual to designate an agent to stand in his or her shoes and to make health-care decisions in the event of disability, "to the same extent as though made by" the individual.

¶ 31    A "health care agency" refers to the power-of-attorney agreement, and is defined to be: "an agency governing any type of health care, anatomical gift, autopsy or disposition of remains for and on behalf of a patient and refers to the power of attorney or other written instrument defining the agency or the agency, itself, as appropriate to the context." 755 ILCS 45/4-4(c) (West 2012). Thus, the Power of Attorney Law provides that the authority of an agent under a health-care power-of-attorney agreement encompasses any type of health-care decision. We therefore hold that the unambiguous language of the Power of Attorney Law encompasses a decision to admit the principal to an assisted-living facility such as defendant's.

¶ 32    Plaintiff and Kahanic executed a statutory short-form power of attorney for health care. See 755 ILCS 45/4-10(b) (West 2012). Under section 4-10(c):

"The statutory short form power of attorney for health care (the 'statutory health care power') authorizes the agent to make any and all health care decisions on behalf of the principal which the principal could make if present and under no disability, subject to any limitations on the granted powers that appear on the face of the form, to be exercised in such manner as the agent deems consistent with the intent and desires of the principal. *** The agent may sign and deliver all instruments, negotiate and enter into all agreements and do all other acts reasonably necessary to implement the exercise of the powers granted to the agent. Without limiting the generality of the foregoing, the statutory health care power shall include the following powers, subject to any limitations appearing on the face of the form:

(1) The agent is authorized to give consent to and authorize or refuse, or to withhold or withdraw consent to, any and all types of medical care, treatment or procedures relating to the physical or mental health of the principal, including any medication program, surgical procedures, life-sustaining treatment or provision of food and fluids for the principal.

(2) The agent is authorized to admit the principal to or discharge the principal from any and all types of hospitals, institutions, homes, residential or nursing facilities, treatment centers and other health care institutions providing personal care or treatment for any type of physical or mental condition. ***

(3) The agent is authorized to contract for any and all types of health care services and facilities in the name of and on behalf of the principal and to bind the principal to pay for all such services and facilities, and to have and exercise those powers over the principal's property as are authorized under the statutory property

power, to the extent the agent deems necessary to pay health care costs; and the agent shall not be personally liable for any services or care contracted for on behalf of the principal." 755 ILCS 45/4-10(c) (West 2012).

¶ 33    Specifically, section 4-10(c) authorizes the agent to "make any and all health care decisions on behalf of the principal," and, importantly, to "sign and deliver all instruments, negotiate and enter into all agreements and do all other acts reasonably necessary to implement the exercise of the powers granted" by the health-care power of attorney. *Id.* This extends to making decisions on medical care, medications, administering food or fluid, admitting and discharging the principal from care facilities, and the like, and contracting with providers for the services allowed under the power of attorney. 755 ILCS 45/4-10(c)(1)-(3) (West 2012).

¶ 34    When we interpret a statutory provision, the cardinal rule, to which all others are subordinate, is to ascertain and give effect to the legislature's intent in enacting the statute. *Gurba v. Community High School District No. 155*, 2014 IL App (2d) 140098, ¶ 38. The best indication of the legislature's intent is the actual language used in the statute, given its plain and ordinary meaning. *Id.* If the language is clear and unambiguous, it must be applied as written and without resort to any of the other aids of statutory interpretation. *Ponto v. Levan*, 2012 IL App (2d) 110355, ¶ 49.

¶ 35    While the Power of Attorney Law is wide ranging, it is clear that the purpose of the law is to allow the agent to make all health-care decisions on behalf of the principal just as if the principal him- or herself were making them. This includes, expressly, the power to enter into necessary contracts for the provision of the health-care services. See 755 ILCS 45/4-10(c)(3) (West 2012). The parties do not challenge any provisions of the Power of Attorney Law as being ambiguous; likewise, we perceive no ambiguity.

¶ 36    Plaintiff contends that the Power of Attorney Law limits the agent's powers "to health care decisions, to contract for health care services and facilities and to bind the principal to pay for all such services and facilities." Plaintiff concludes that Kahanic "did not have authority to agree to arbitrate claims unrelated to payment for health care services and facilities." We disagree.

¶ 37    Plaintiff limits his reading of the Power of Attorney Law to section 4-10(c)(3), which does state that the agent has the authority to arrange for health-care services and "to bind the principal to pay for all such services and facilities, and to have and exercise those powers over the principal's property as are authorized under the statutory property power, to the extent the agent deems necessary to pay health care costs." 755 ILCS 45/4-10(c)(3) (West 2012). We note that plaintiff relies on a truncated portion of section 4-10(c)(3), which actually ends with the clause, "and the agent shall not be personally liable for any services or care contracted for on behalf of the principal." *Id.*; see also *supra* ¶ 32. However, section 4-10(c) provides that the "agent may sign and deliver all instruments, negotiate and enter into all agreements and do all other acts reasonably necessary to implement the exercise of the powers granted to the agent." 755 ILCS 45/4-10(c) (West 2012); see also *supra* ¶ 32. Further, section 4-10(c) states that the specific power in subsection (c)(3) is provided "[w]ithout limiting the generality" of that broader power. 755 ILCS 45/4-10(c) (West 2012); see also *supra* ¶ 32. Clearly, then, an agent is not limited to matters of payment and may do anything reasonably necessary to implement and exercise the agent's powers under the power of attorney.

¶ 38    Thus, we hold that the statement, "[t]he agent may sign and deliver all instruments, negotiate and enter into all agreements and do all other acts reasonably necessary to implement the exercise of the powers granted to the agent," sets forth the scope of the agent's powers,

unless expressly limited in the power-of-attorney instrument itself, and that it means what it says. The agent may enter into agreements necessary to carry out his or her duties on behalf of the principal.

¶ 39    In this case Kahanic, acting as plaintiff's agent and attorney-in-fact, entered into an agreement for defendant to provide living quarters and health-care-related services for plaintiff. The agreement included an arbitration provision.  Acceptance of the arbitration provision, an integral part of the establishment contract, was a prerequisite to admission into defendant's facility.  Under section 4-10(c), Kahanic was allowed to bind plaintiff to the establishment contract, including the arbitration provision, in order to secure plaintiff's placement at defendant's facility.  Accordingly, the trial court erred in determining that binding plaintiff to the arbitration provision was outside the scope of Kahanic's powers as plaintiff's agent and attorney-in-fact.

¶ 40    We note that the general rule limits the scope of a health-care power of attorney to matters involving the principal's health care and that the agent is given no authority over the principal's property or financial matters. *In re Estate of Stahling*, 2013 IL App (4th) 120271, ¶ 26.  With that said, however, health-care decisions, such as placement in an assisted-living facility, are not so cut and dried.  Several recent cases, albeit from our sister states, demonstrate a clear trend of holding that health-care decisions that encompass collateral issues, such as the acceptance of an arbitration clause, may still be considered to be legitimate health-care decisions under the authority granted by a health-care power of attorney.

¶ 41    In *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), the Kentucky Supreme Court considered whether a health-care power of attorney granted the power to bind the principal to an arbitration agreement.  The court reasoned that, "where an agreement to arbitrate is

presented to the patient as a condition of admission to the nursing home, courts have held that the authority incident to a health-care durable power of attorney includes the authority to enter such an agreement." *Id.* at 593 (citing cases). However, where "the arbitration agreement is not a condition of admission to the nursing home, but is an optional, collateral agreement, courts have held that authority to choose arbitration is not within the purview of a health-care agency," because "agreeing to arbitrate is not a 'health care' decision." *Id.* (citing cases). The court held that, because the arbitration provision was not a requirement for admission to the nursing home, the patient's agent did not have the authority to consent to arbitration, because "there was no reasonable necessity to do so." *Id.* at 594.

¶ 42    Likewise, in *Dickerson v. Longoria*, 995 A.2d 721, 739 (Md. 2010), the court drew a distinction between legal decisions and health-care decisions. The court explained:

"The decision to sign a free-standing arbitration agreement is not a health care decision if the patient may receive health care without signing the arbitration agreement. In such a case, the decision primarily concerns the legal rights of the patient with respect to resolving legal claims. If signing the arbitration agreement is necessary to receive health care, then the decision to sign the agreement is a health care decision because the receipt of health care depends on whether the patient agrees to arbitrate his or her claims. In that case, the decision to sign the arbitration agreement is effectively a decision about where and whether to receive health care, either from a facility that requires the patient to sign an arbitration agreement, from a facility that does not impose such a requirement, or from no facility at all." *Id.*

¶ 43    The Tennessee Supreme Court also reached a similar result in *Owens v. National Health Corp.*, 263 S.W.3d 876 (Tenn. 2008). There, the court reasoned that the patient's power of

attorney authorized the agent to make health-care decisions, which included any care, treatment, service, or procedure to treat, diagnose, or maintain a patient's physical or mental condition. *Id.* at 883-84. The court further determined that the decision whether to admit a patient to a nursing home was a health-care decision. *Id.* The court held that "an attorney-in-fact acting pursuant to a durable power of attorney for health care may sign a nursing-home contract that contains an arbitration provision because this action is necessary to 'consent *** to health care.' [Citation.]" *Id.* at 884.

¶ 44 In similar fashion, courts have also held that, where the arbitration provision is optional or otherwise not necessary to gain admission to a long-term-care facility, the agent acting pursuant to a health-care power of attorney is not authorized to sign the arbitration provision and the patient cannot be bound by the agent's action. *Life Care Centers of America v. Smith*, 681 S.E.2d 182, 185-86 (Ga. Ct. App. 2010); *Koricic v. Beverly Enterprises-Nebraska, Inc.*, 773 N.W.2d 145, 151 (Neb. 2009). Finally, a court in Texas held that an agent could not bind the principal if the agent executed the agreement before the power of attorney became effective. *Texas Cityview Care Center, L.P. v. Fryer*, 227 S.W.3d 345, 352 (Tex. App. 2007). As well, the *Fryer* court noted that the medical power of attorney at issue there had not intended the agent to make legal decisions, like agreeing to arbitration, rather than health-care decisions. *Id.*

¶ 45 The foregoing cases clearly develop the principle that, if an arbitration provision is required for admission to a care facility then it becomes part and parcel of the health-care decision to admit the patient to the facility. Here, consent to the arbitration provision was an integral part of plaintiff's admission to defendant's facility. The arbitration provision was neither optional nor freestanding. *Ping*, *Dickerson*, and *Owens* all directly support the result we have reached: plaintiff's power of attorney authorized Kahanic to bind plaintiff to the arbitration

provision because it was part of the establishment contract that gained plaintiff admission into defendant's facility. Similarly, *Smith*, *Koricic*, and *Fryer* indirectly support our result because they distinguish between a decision on an arbitration provision that is required for admission to a nursing-care facility, recognizing it as a health-care decision, and a decision on an arbitration provision that is optional or not required for admission.

¶ 46 We note that, in *Curto v. Illini Manors, Inc.*, 405 Ill. App. 3d 888, 894 (2010), the court held that a wife lacked the authority to sign an arbitration agreement when admitting her husband to a residential nursing home. In that case, however, there was no evidence that the husband had executed a power of attorney in favor of his wife. *Id.* at 892-93. Additionally, and in harmony with the persuasive foreign authority discussed above, the arbitration agreement was separate from the contract for admission to the facility. *Id.* at 890. Thus, *Curto* may be understood to hew to the line of cases holding that a separate arbitration agreement is outside the power of the agent exercising the right to make health-care decisions (although the fact that there was no power of attorney granted in *Curto* also serves to distinguish the case).

¶ 47 As a final matter, we note that the Nursing Home Care Act (210 ILCS 45/1-101 *et seq.* (West 2012)) contemplates that a patient must execute a written contract with a facility. 210 ILCS 45/2-202 (West 2012). Section 2-202 states:

> "(a) Before a person is admitted to a facility, or at the expiration of the period of previous contract, or when the source of payment for the resident's care changes from private to public funds, or from public to private funds, a written contract shall be executed between a licensee and the following in order of priority:
>
> > (1) the person, or if the person is a minor, his parent or guardian; or

(2) the person's guardian, if any, or agent, if any, as defined in Section 2-3 of the Illinois Power of Attorney Act [(755 ILCS 45/2-3 (West 2012))]; or

(3) a member of the person's immediate family.

An adult person shall be presumed to have the capacity to contract for admission to a long term care facility unless he [satisfies exceptions not applicable here]." 210 ILCS 45/2-202(a) (West 2012).

Thus, the Nursing Home Care Act expressly contemplates that an agent holding a power of attorney may sign the contract admitting the principal to the facility. This, too, bolsters our conclusion that Kahanic was authorized to sign the establishment contract, including the arbitration provision, on behalf of plaintiff.

¶ 48    We note that a recent amendment to the Power of Attorney Law added a definition of "health care agent" that appears to be distinct from the definition of "agent" under section 2-3 of the Power of Attorney Law (755 ILCS 45/2-3 (West 2012)) (which the Nursing Home Care Act adopted (210 ILCS 45/2-202(a)(2) (West 2012))):

"an individual at least 18 years old designated by the principal to make health care decisions of any type, including, but not limited to, anatomical gift, autopsy, or disposition of remains for and on behalf of the individual. A health care agent is a personal representative under state and federal law. The health care agent has the authority of a personal representative under both state and federal law unless restricted specifically by the health care agency." Pub. Act 98-1113 (eff. Jan. 1, 2015) (adding 755 ILCS 45/4-4(e)(5)).

¶ 49    We note the amendment for purposes of completeness, but the amendment does not affect our analysis here.  Rather, it is sufficient to note that the Nursing Home Care Act supports our construction of the Power of Attorney Law under the facts of this case.

¶ 50    For all of the foregoing reasons, then, we conclude that the trial court erred in holding that the health-care power of attorney did not grant Kahanic the authority to execute the arbitration provision.

¶ 51                    C. Enforceability Under the Federal Arbitration Act

¶ 52    Defendant last argues that the Federal Arbitration Act provides an alternate avenue by which the trial court could have compelled arbitration in this matter.  While we have held above that, as a matter of state law, the arbitration provision in the establishment contract is enforceable, this holding would obviously apply to plaintiff's common-law tort claims.  However, plaintiff has also alleged claims under the Nursing Home Care Act, and it is a little less clear whether they may be arbitrated.  Section 3-606 of the Nursing Home Care Act (210 ILCS 45/3-606 (West 2012)) provides that "[a]ny waiver by a resident or his legal representative of the right to commence an action under Sections 3-601 through 3-607, whether oral or in writing, shall be null and void, and without legal force or effect."  Section 3-607 of the Nursing Home Care Act (210 ILCS 45/3-607 (West 2012)), in turn, provides:

> "Any party to an action brought under Sections 3-601 through 3-607 shall be entitled to a trial by jury and any waiver of the right to a trial by jury, whether oral or in writing, prior to the commencement of an action, shall be null and void, and without legal force or effect."

These provisions appear to forbid a contractual specification for the arbitration of any claims brought under the Nursing Home Care Act.

¶ 53    In *Fosler*, 398 Ill. App. 3d at 573, this court held that sections 3-606 and 3-607 of the Nursing Home Care Act conflicted with and were preempted by the Federal Arbitration Act. Likewise, our supreme court has held that "the public policy behind the antiwaiver provisions of sections 3-606 and 3-607 of the Nursing Home Care Act are not 'grounds as exist at law or in equity for the revocation of any contract' within the meaning of section 2 of the [Federal Arbitration Act] (9 U.S.C. § 2 (2000))." *Carter*, 237 Ill. 2d at 50.  Accordingly, the supreme court has definitively held that the Nursing Home Care Act's prohibition of arbitration agreements between a nursing home and a resident was precluded by the Federal Arbitration Act. *Id.* at 47, 50.  Thus, the claims brought pursuant to the Nursing Home Care Act are also arbitrable pursuant to the arbitration provision in the establishment contract.

¶ 54                                III. CONCLUSION

¶ 55    For the foregoing reasons, the judgment of the circuit court of Kane County is reversed.

¶ 56    Reversed.