2019 IL App (1st) 182645

No. 1-18-2645

Opinion filed April 9, 2019

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| TONY LIU and CATHY LI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 17 CH 14949 |
| FOUR SEASONS HOTEL, LTD., and 900 HOTEL VENTURE, LLC, d/b/a FOUR SEASONS HOTEL, CHICAGO, | ) ) ) ) | Honorable Franklin Ulyses Valderrama, |
| Defendants-Appellants. | ) ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1   In this interlocutory appeal, we are asked to decide one issue: whether an arbitrator or the trial court should determine whether hotel employees' claims under the Biometric Information Privacy Act (Act) (740 ILCS 14/1 *et seq.* (West 2016)) constitute "wage or hour violation[s]."

¶ 2   Plaintiffs filed a class action complaint, alleging that their employer, Four Seasons Hotel, Ltd. (Four Seasons), violated the Act in its method of collecting, using, storing, and disclosing their biometric data, namely, their fingerprints for timekeeping purposes. Four Seasons filed a

motion to compel arbitration, arguing that the plaintiffs signed an employment agreement that required four types of employment disputes, including "wage or hour violation" claims, be submitted to an arbitrator. The trial court denied the motion to compel arbitration on the grounds that a claim under the Act is not one of the types of disputes the parties agreed to arbitrate.

¶ 3    Four Seasons argues that (i) the plaintiffs' claims constitute "wage or hour violation" claims because Four Seasons used the fingerprint data to track employees' work hours, (ii) the arbitration provision was not unconscionable, (iii) the class action waiver provision does not affect the enforceability of the arbitration provision, and (iv) the question of arbitrability should be decided by an arbitrator.

¶ 4    We affirm. Plaintiffs' claim does not involve a "wage or hour violation" subject to arbitration. Further, under the employment agreement, which limits the types of disputes that must be arbitrated, arbitrability lies within the domain of the trial court.

¶ 5                                    BACKGROUND

¶ 6                          The Employment Agreement

¶ 7    The Four Seasons, a luxury hotel in downtown Chicago, offers newly-hired employees an employment agreement called "EmPact." The EmPact agreement includes a six-step "Complaint, Arbitration & Review for Employees," (C.A.R.E.) process for dispute resolution. The C.A.R.E. process begins with an informal meeting between the employee and his or her supervisor and gets progressively more formal. If none of the intervening steps resolve the matter, the sixth and final step provides for mandatory, binding arbitration if the dispute "is based on one of the following types of claims as defined by law: (a) employment discrimination; (b) harassment as it relates to my employment; (c) a wage or hour violation; (d) or termination of my employment from the Hotel."

¶ 8    Four Seasons employees are not required to sign the EmPact agreement or agree to the mandatory arbitration provision. According to Four Seasons, during new employee orientation, the EmPact agreement provisions are explained and new employees then have 30 days after the end of their 90-day probationary period to opt out. Current employees have 30 days to opt out whenever Four Seasons revises the EmPact agreement. Employees who opt out remain employed as at-will employees. They give up potential severance pay, but may still use the C.A.R.E. provisions to resolve employee disputes. Employees who do not opt out waive their rights to have their case "submitted to a court of law and decided by a judge or jury." They also waive their rights to have their claims submitted as part of a class action.

¶ 9                    The Biometric Information Privacy Act

¶ 10    In 2008, Illinois enacted the Act (740 ILCS 14/1 *et seq.* (West 2016)) to help regulate "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Id.* § 5(g). " 'Biometric identifier' " includes "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 10. " 'Biometric information' " means "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*

¶ 11    Section 15 of the Act imposes on private entities, like defendants, obligations regarding the collection, retention, disclosure, and destruction of biometric identifiers and biometric information, including (i) obtaining consent from individuals if the company intends to collect, store, or disclose their personal biometric identifiers, (ii) inform the individuals in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used, (iii) destroying biometric identifiers in a timely manner, and (iv) securely storing biometric identifiers. See *id.* § 15. The Act provides a private right of action

that permits a prevailing party to recover damages of $1000 (or actual damages if greater) for negligent violation of the Act and $5000 (or actual damages if greater) for intentional or reckless violations, as well as attorney's fees, costs, and expenses. *Id.* § 20.

¶ 12                                    The Class Action

¶ 13    Tony Liu began working at Four Seasons as a bell attendant in 2006. He signed the EmPact agreement on April 27, 2006, in December 2006, and in July 2012. Cathy Li began working at Four Seasons as a part-time housekeeper on April 26, 2010. Li signed a copy of the EmPact agreement on August 6, 2010. She signed a revised version on June 27, 2012.

¶ 14    Sometime after Liu and Li began working at Four Seasons, the hotel asked employees to have their fingerprints scanned. The fingerprints are placed in a database and used for timekeeping purposes. At the beginning and end of each workday, employees must scan their fingerprints so Four Seasons can track the number of hours worked. All newly hired employees must have their fingerprints scanned and added to the employee database.

¶ 15    In July 2017, both Liu and Li signed an acknowledgement and consent to Four Seasons's policy regarding collection and storage of biometric data, including fingerprints. The document stated that employee fingerprint data would be used for management of payroll and would not be shared with anyone absent the employee's consent or a court order. Four Seasons would destroy the retained data within two business days after the employee ends employment with the hotel.

¶ 16    Four Seasons fired Liu on October 10, 2017, for poor performance and work rule violations; Li is still an employee of Four Seasons.

¶ 17    Liu and Li filed a complaint on behalf of themselves and a class of other similarly situated employees on November 9, 2017, alleging that Four Seasons violated the Act and breached fiduciary duties to their employees by failing to (i) inform employees that it discloses

fingerprint data to an out-of-state third party vendor; (ii) fully inform employees in writing of the specific purpose and length of time their fingerprints were being collected, stored, and used; (iii) provide employees with a publicly available retention schedule and guidelines for permanently destroying their fingerprints; and (iv) acquire written releases from employees to collect, capture, or otherwise obtain their fingerprints. Plaintiffs sought statutory damages and an order requiring Four Seasons to cease violating the Act.

¶ 18     Four Seasons filed a motion to compel arbitration, arguing that (i) Illinois law strongly favors arbitration, (ii) both plaintiffs voluntarily signed the EmPact agreement on multiple occasions, and (iii) the agreement along with its arbitration provision is an enforceable contract binding on both parties. Initially, Four Seasons argued that plaintiffs agreed to "resolve any disputes regarding *** employment by way of arbitration rather than litigation." In its reply motion, however, Four Seasons argued that plaintiffs' claim fits under the specific "wage or hour violation" language of C.A.R.E. The trial court disagreed, and denied the motion.

¶ 19     Four Seasons filed this interlocutory appeal.

¶ 20                                ANALYSIS

¶ 21                          Standard of Review

¶ 22     An order granting or denying a motion to compel arbitration is injunctive in nature and may be appealed under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001); *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1098-99 (2009). In an appeal under Rule 307(a)(1), the only issue involves whether there was a sufficient showing to sustain the trial court's order granting or denying the relief sought. *Hollingshead*, 396 Ill. App. 3d at 1099. In an appeal from the denial of a motion to compel arbitration without an evidentiary hearing, our review is *de novo*. *Id.* Additionally, interpretation

of an arbitration agreement presents a question of law, which we review *de novo*. See *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46, 52 (2011).

¶ 23                                          Arbitration

¶ 24    The Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/1 *et seq.* (West 2016)) " 'must be deemed part of a contract containing an arbitration clause.' " *Advocate Financial Group v. Poulos*, 2014 IL App (2d) 130670, ¶ 48 (quoting *Johnson v. Baumgardt*, 216 Ill. App. 3d 550, 560 (1991)). The Arbitration Act embodies a policy that favors arbitration as a cost-effective method of dispute resolution. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 443 (1988). Section 2 of the Arbitration Act provides that, on application of a party, the trial court may compel or stay arbitration or stay a court action pending arbitration. 710 ILCS 5/2(a), (b) (West 2016). A motion to compel raises a sole and narrow issue—whether the parties agreed to arbitrate the dispute. *Donaldson, Lufkin & Jenrette Futures, Inc.*, 124 Ill. 2d at 444, 449. In making that determination, courts use a three-pronged approach: (i) if it is clear that the dispute falls within the scope of the arbitration clause or agreement, the court must compel arbitration, (ii) if it is clear that the dispute does not fall within the arbitration clause or agreement, the court must deny the motion to compel, and (iii) if it is unclear or ambiguous whether the dispute falls within the scope of the arbitration clause, the matter should be referred to the arbitrator to decide arbitrability. *Id.* at 443-50.

¶ 25    An agreement to arbitrate presents a matter of contract. *Salsitz*, 198 Ill. 2d at 13. The parties to an agreement "are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Royal Indemnity Co. v. Chicago Hospital Risk Pooling Program*, 372 Ill. App. 3d 104, 110 (2007). When construing a contract, we seek to effectuate the intent of the parties. *Premier Title*

*Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). When the contractual language is clear, the court determines the parties' intent solely from the express language of the contract, giving the language its plain and ordinary meaning. *Id.* Courts also consider the document as a whole (*id.*), and cannot make a new contract by supplying provisions or by giving plain and unambiguous language a distorted construction. *Whaley v. American National Insurance Co.*, 30 Ill. App. 3d 32, 34 (1975).

¶ 26    It is a fundamental tenet of Illinois law that parties be bound to arbitrate only those issues they have agreed to arbitrate. *Keeley & Sons, Inc. v. Zurich American Insurance Co.*, 409 Ill. App. 3d 515, 520 (2011). Where an arbitration clause is "generic," meaning it is nonspecific in designating what issues should be arbitrated, the court must examine the wording of the arbitration clause, along with the other terms of the contract in which the arbitration clause is found. *Id.* at 520-21. A "generic" arbitration clause is characterized by language providing that all claims arising out of or relating to the contract shall be decided by arbitration. *Id.* at 520. By contrast, where an arbitration clause contains the phrase, "arising out of [the] agreement" (or a similar phrase), but fails to also include the phrase, "or relating to [the agreement]" (or a similar phrase), it is narrower than a generic clause, and any arbitration should be limited to the specific terms of the contract or agreement containing the arbitration clause. (Internal quotation marks omitted.) *Id.* at 522.

¶ 27    As noted, the C.A.R.E. document states that if an employee's complaint cannot be resolved by the intermediate steps provided, an independent arbitrator decides as long as "it is based on one of the following types of claims as defined by law[:] (a) employment discrimination; (b) harassment as it relates to my employment; (c) a wage or hour violation; (d)

or termination of my employment form the Hotel (including 'constructive discharge', but not a permanent layoff)."

¶ 28    Four Seasons contends that the plaintiffs' complaint falls within a "wage or hour violation" claim, which must be arbitrated. Specifically, Four Seasons contends that the sole purpose of requiring employees to scan their fingerprints was to monitor the hours worked, which necessarily makes it a "wage or hour violation" claim. We disagree. Neither party cites Illinois cases defining the phrase "wage or hour violations" in the context of mandatory arbitration. And our research similarly failed to uncover any cases. But Illinois statutes addressing wage violations—like the Illinois Wage Payment Collection Act (820 ILCS 115/1 *et seq.* (West 2016)) and the Minimum Wage Law (820 ILCS 105/1, *et seq.* (West 2016)), as well as the federal Fair Labor Standards Act of 1938 (29 U.S.C. 201 *et seq.* (2012))—provide that wage and hours violation claims involve allegations of an employer wrongfully withholding compensation (see *Enger v. Chicago Carriage Cab Co.*, 77 F. Supp. 3d 712, 715-16 (N.D. Ill. 2014)) or failing to comply with the federal or state wage and hour laws by, for instance, failing to pay employees overtime rates for work required to be performed in excess of 40 hours per week (see *People ex rel. Department of Labor v. MCC Home Health Care, Inc.*, 339 Ill. App. 3d 10, 21 (2003).

¶ 29    Four Seasons cites several California cases to support arbitrability of a wage or hour violation claim. But all of these cases involved employees' claims that their employers failed to provide rest breaks and itemized wage statements or pay overtime, obvious wage or hour violations. See, *e.g.*, *Lane v. Francis Capital Management, LLC*, 168 Cal. Rptr. 3d 800 (Ct. App. 2014) (holding that arbitration agreement covered employees' claims for unpaid overtime wages, unpaid meal period wages, waiting time penalties, and itemized wage statement violations).

Conversely, the plaintiffs' complaint does not allege that Four Seasons failed to properly pay wages or required employees to work excessive hours. Instead, it alleges Four Seasons violated their privacy rights by requiring them to submit to fingerprint scanning as a timekeeping method, squarely a matter under the Act.

¶ 30     In short, the Act is a privacy rights law that applies inside and outside the workplace. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 33 ("Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information."). Simply because an employer opts to use biometric data, like fingerprints, for timekeeping purposes does not transform a complaint into a wages or hours claim. Thus, the trial court properly found that plaintiffs' claims were not subject to mandatory arbitration under the C.A.R.E. provision of the EmPact agreement.

¶ 31     Four Seasons also contends that an arbitrator should decide whether plaintiffs' claims fall within the scope of the arbitration agreement. As noted, "when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls within the scope of arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." *Donaldson, Lufkin & Jenrette Futures, Inc.*, 124 Ill. 2d at 447-48. But, if it is clear that the dispute does not fall within the arbitration clause or agreement, the court must deny the motion to compel. See *id.* at 445. The language in the C.A.R.E. process is neither broad nor unclear, and specifies four types of arbitrable disputes. Collecting fingerprint data does not fall into any of the four categories and, accordingly, we affirm.

¶ 32     In light of our holding, we need not address Four Seasons's remaining arguments.

¶ 33     Affirmed.