2020 IL App (1st) 191215-U

SIXTH DIVISION
MAY 29, 2020

No. 1-19-1215

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JEFFREY HARRIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CH 1985 |
| | ) | |
| RUN THE CALL, INCORPORATED, | ) | Honorable |
| | ) | Sanjay Tailor, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order granting the plaintiff's motion to stay arbitration is affirmed.

¶ 2    Following an arbitration demand from the defendant-appellant, Run The Call, Inc. (RTC), the plaintiff-appellee, Jeffrey Harris, filed a motion in the circuit court of Cook County to stay arbitration. The circuit court granted Harris' motion to stay arbitration and RTC now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                     BACKGROUND

¶ 4     RTC is a Delaware Corporation with its headquarters in Illinois. RTC provides an online application based service for lawyers to get other lawyers to cover court status hearings.

¶ 5     On June 22, 2016, Harris purchased 1.2 million shares of RTC under a Restricted Common Stock Purchase Agreement (the Agreement), making him a minority shareholder. The Agreement states that all the shares Harris purchased are unvested and provides a timeline for the shares to vest. The Agreement grants RTC the right to repurchase, under certain conditions, "any portion of [Harris' shares] in which [Harris] has not acquired a vested interest."

¶ 6     The Agreement contains the following arbitration clause:

> "Any controversy between the parties hereto involving any claim arising out of or relating to this Agreement shall be finally settled by arbitration in Cook County, Illinois, in accordance with the current Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof."

¶ 7     By May 2018, some of Harris' shares had vested so that he had both unvested and vested shares.[1] On May 24, 2018, RTC's CEO sent an email to two other shareholders recommending that RTC redeem 12.5% of Harris' unvested shares on the basis that he had not been an active shareholder. RTC subsequently redeemed Harris' unvested shares pursuant to the Agreement.[2]

---

[1] It is unclear from the record how many of Harris' shares had vested by May 2018.
[2] It is unclear from the record what percentage of Harris' unvested shares were ultimately redeemed by RTC or at what value.

¶ 8 On July 16, 2018, RTC's CEO sent another email to all shareholders, including Harris, telling them that there would be a special meeting on August 5, 2018, regarding Harris and his vested shares. The email stated:

> "RTC's attempts to raise external capital have been thwarted by [Harris'] lack of disclosure regarding [a complaint against him at the Attorney Registration and Disciplinary Commission]. This has extended the projected time to seek/close our capital financing far beyond anything we as a team had ever anticipated, forcing the company into financial hardship as a result."

The CEO's email recommended redeeming Harris' vested shares in order to recover from the financial hardship caused by Harris' misconduct.

¶ 9 The CEO's email included proposed language to add to RTC's bylaws. If approved, the new language in the bylaws would allow RTC to redeem a shareholder's vested shares if the shareholder committed misconduct against RTC. The relevant proposed language stated:

> "(b) The Members, by vote of at least a majority of the Profit Percentages (excluding the Member that is subject to the redemption), may decide to redeem a Member's interest in the Company with cause as defined herein.
>
> (c) For purposes of this Section, 'cause' means:
>
> (i) Fraud, dishonesty or willful and serious misconduct by the Member, whether or not with respect to the business or affairs of the Company, which affects the business, affairs or reputation of the Company."

¶ 10    During the special meeting on August 5, 2018, the shareholders voted to amend RTC's bylaws (the Amended Bylaws). The Amended Bylaws incorporated the CEO's proposed language, allowing RTC to redeem a shareholder's vested shares if that shareholder committed misconduct affecting RTC. The Amended Bylaws do not contain an arbitration clause.

¶ 11    At the same special meeting, all of RTC's shareholders, except for Harris, voted to redeem Harris' vested shares at a discounted value pursuant to the newly incorporated language in the Amended Bylaws. The vote was based on Harris' alleged misconduct against RTC. Harris objected to both the redemption and the valuation of his vested shares. According to the parties, they were unable to resolve the issue and so RTC could not move forward with the redemption.

¶ 12    On October 10, 2018, RTC filed a demand for arbitration against Harris with the American Arbitration Association (AAA). In its arbitration demand, RTC stated that Harris' vested shares were redeemed during the August 5, 2018 special meeting and sought a binding determination of the fair value of Harris' vested shares.

¶ 13    Harris filed an objection to the arbitration. His objection argued that RTC's redemption of his vested shares arose under the Amended Bylaws, which does not contain an arbitration clause. He conceded that the Agreement, under which he originally purchased his unvested shares, does contain an arbitration clause. He averred, however, that his *vested* shares were not redeemed pursuant to the Agreement, but instead through the Amended Bylaws, and so RTC's claim seeking to redeem his vested shares was not subject to the Agreement's arbitration clause.

¶ 14    According to RTC, after Harris filed an objection to the arbitration, Harris "participated in [the] AAA process" by "engaging in the arbitrator selection process," "participating in a prehearing call with the selected arbitrator," "agreeing to brief the matter of arbitrability," and "obtaining leave from the arbitrator to file a counterclaim in the arbitration process."

¶ 15    On February 6, 2019, the arbitrator entered an order denying Harris' objection and found RTC's claim to be arbitrable pursuant to the arbitration clause in the Agreement. The arbitrator scheduled an arbitration date for April 10, 2019.

¶ 16    On February 14, 2019, Harris filed a motion in the circuit court of Cook County to stay arbitration. His motion argued that RTC's claim involved his *vested* shares, and that the arbitration clause in the Agreement applies only to his *unvested* shares.

¶ 17    In response, RTC filed a motion in the circuit court to dismiss Harris' motion and compel arbitration. Its motion argued: "It is unmistakable that RTC's demand for arbitration 'arises out of' or 'relates to' [the Agreement]." RTC subsequently filed an amended motion to dismiss Harris' motion and compel arbitration. The amended motion additionally argued that Harris had waived his right to seek an arbitration stay by participating in the early stages of the arbitration process.

¶ 18    Following a hearing on the parties' motions,[3] the trial court entered an order granting Harris' motion to stay arbitration and denying RTC's motion. This appeal followed.

¶ 19                                    ANALYSIS

¶ 20    As an initial matter, we acknowledge that the trial court's order staying arbitration stated: "Pursuant to Supreme Court Rule 304(a), this matter is final and appealable." However, it is well settled that an order staying arbitration is injunctive in nature and subject to interlocutory appeal as of right pursuant to Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). Because Harris filed a notice of appeal within 30 days after the court stayed the arbitration, we have jurisdiction to consider this matter.

---

[3]There are no transcripts or bystander's reports from the hearing in the record on appeal.

¶ 21    Although RTC frames its arguments as several different issues for this court to review, its arguments amount to one issue: whether the trial court erred in granting Harris' motion to stay arbitration.

¶ 22    RTC argues that its claim against Harris regarding the redemption of his vested shares is subject to arbitration pursuant to the arbitration clause in the Agreement. Specifically, RTC argues that the Agreement's language "as a whole shows that it is intended to cover all aspects of the purchase, holding, transfer, redemption, and sale of stock, whether vested or unvested." RTC claims that it was the intent of the parties "to arbitrate disputes over *any* aspect of" Harris' shares. In support of its argument, RTC stresses that the arbitrator found its claim to be arbitrable. Additionally, RTC argues that Harris consented to arbitration, and therefore waived any right to seek an arbitration stay, by participating in the early stages of the arbitration process.

¶ 23    An agreement to submit to arbitration is a matter of contract. *Green v. Bank One LaGrange*, 266 Ill. App. 3d 344, 348 (1994). Section 2(b) of the Uniform Arbitration Act (Act) provides that trial courts "may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate." 710 ILCS 5/2(b) (West 2018). The Act embodies a policy that favors arbitration as a cost-effective method of dispute resolution. *Guarantee Trust Life Insurance Co. v. Platinum Supplemental Insurance, Inc.*, 2016 IL App (1st) 161612, ¶ 26. At the same time, the parties to an arbitration agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 25. "The paramount factor in determining the parties' intention is the scope of the arbitration clause." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445 (1988).

¶ 24    Generally, in interlocutory appeals brought pursuant to Rule 307(a)(1), the proper standard

of review is abuse of discretion. *LAS, Inc. v. Mini-Tankers, USA, Inc.*, 342 Ill. App. 3d 997, 1001 (2003). However, that is not the applicable standard of review when, such as in this case, the facts are not in dispute. *Id*. "[T]he proper standard of review is dictated by the nature of the question presented ***." *Id*. The ultimate issue before us now is a *question of law*; *i.e.,* whether the arbitration clause in the Agreement covers claims relating to Harris' vested shares. See *City of Springfield v. Ameren Illinois Co.*, 2018 IL App (4th) 170755, ¶ 38 (the interpretation of a contract is a question of law). Indeed, the trial court in this case made no factual determinations. And a reviewing court determines a legal question independently of the trial court's judgment, using a *de novo* standard of review. *LAS, Inc.*, 342 Ill. App. 3d at 1001. Accordingly, we review the issue presented *de novo*.

¶ 25    We note that RTC failed to include in the record on appeal, any transcripts or bystander's reports. It is the appellant's burden to present a sufficiently complete record. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391–92 (1984). In the absence of transcripts or bystander's reports, it is presumed that the trial court acted in conformity with the law and that the court's findings were based on the evidence. *Id.* Accordingly, we must presume that the trial court in this case acted properly in granting Harris' motion to stay arbitration.

¶ 26    In any event, our *de novo* review makes clear that the trial court did not err. While the arbitration clause in the Agreement provides: "Any controversy between the parties hereto involving any claim *arising out of or relating to this Agreement* shall be finally settled by arbitration ***" (emphasis added); the language in the Agreement explicitly states that it applies only to Harris' *unvested* shares. In fact, a primary purpose of the Agreement is to provide a framework for RTC to redeem Harris' shares "*in which [he] has not acquired a vested interest*." Meanwhile, the Agreement is silent as to the process for redeeming Harris' *vested* shares. Although

the Agreement does provide a timeline in which Harris' unvested shares will vest, the Agreement otherwise has nothing to do with Harris' shares once they vest. As the claim at issue as raised by RTC involves redeeming Harris' *vested* shares, the arbitration clause in the Agreement is inapplicable.

¶ 27   Significantly, when RTC decided to redeem Harris' shares, it was only able to redeem his *unvested* shares through the Agreement. In order to redeem his *vested* shares, RTC had to amend its bylaws and add a provision which would allow for RTC's redemption of the vested shares. Indeed, RTC's claim at issue regarding Harris' vested shares is based on the *Amended Bylaws*, an entirely separate document than the one relied upon by RTC. There is no arbitration clause in the *Amended Bylaws*.

¶ 28   While arbitration clauses are interpreted broadly and courts generally favor arbitration, it is a fundamental tenet of Illinois law that parties be bound to arbitrate *only* those issues they have agreed to arbitrate. *Liu*, 2019 IL App (1st) 182645, ¶ 26. The arbitration clause in this case mandates arbitration for any claims arising out of the Agreement, but the Agreement strictly pertains *only to Harris' unvested shares*. Even under the broadest reading of the arbitration clause, it still refers only to Harris' unvested shares, and we will not force a wider interpretation. See *Salsitz*, 198 Ill. 2d at 13 ("[a]n arbitration agreement will not be extended by construction or implication"). Consequently, Harris and RTC are bound to arbitrate only those issues relating to Harris' *unvested* shares; and so RTC's claim at issue regarding Harris' *vested* shares is not subject to arbitration.

¶ 29   RTC makes much of the fact that the arbitrator found its claim against Harris to be arbitrable. However, the question of whether the parties agreed to arbitrate is decided *by the court*, not the arbitrator. *Marks v. Bober*, 399 Ill. App. 3d 385, 390 (2010). See also *Donaldson*, *Lufkin*

*& Jenrette Futures, Inc.*, 124 Ill. 2d at 451 (the arbitrator's decision is subject to an ultimate determination of arbitrability by the court).

¶ 30     RTC's argument that Harris waived his right to seek an arbitration stay by participating in the early stages of the arbitration process also fails. Harris properly and timely objected to RTC's arbitration demand. The fact that he then participated in the early stages of the arbitration process while the arbitrator considered his objection does not negate his objection. See *Salsitz*, 198 Ill. 2d at 18 (a timely objection preserves the right to challenge arbitration, even where the parties participate in the arbitration proceedings). Certainly, Harris had to prepare for arbitration in the event that his objection was denied. This does not mean that he forfeited his right to file an action in the trial court to stay arbitration.

¶ 31     In sum, the trial court did not err in granting Harris' motion to stay arbitration. We accordingly affirm the trial court's judgment.

¶ 32                                    CONCLUSION

¶ 33     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34     Affirmed.