NOTICE
Decision filed 09/01/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230346

NO. 5-23-0346

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DENNIS L. CLARK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 23-LA-1 |
| | ) | |
| FORESIGHT ENERGY, LLC; | ) | |
| FORESIGHT ENERGY SERVICES, LLC; | ) | |
| SUGAR CAMP ENERGY, LLC; | ) | |
| FORESIGHT ENERGY, L.P.; | ) | |
| FORESIGHT ENERGY OPERATING, LLC; | ) | |
| FORESIGHT ENERGY RESOURCES, LLC; | ) | |
| M-CLASS MINING, LLC; | ) | |
| VIKING MINING, LLC; | ) | |
| FORESIGHT ENERGY LABOR, LLC; | ) | |
| COAL FIELD CONSTRUCTION COMPANY, | ) | |
| LLC; and ADENA RESOURCES, LLC, | ) | Honorable |
| | ) | Eric J. Dirnbeck, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice McHaney concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendants—Foresight Energy, LLC; Foresight Energy Services, LLC; Sugar Camp Energy, LLC; Foresight Energy, L.P.; Foresight Energy Operating, LLC; Foresight Energy Resources, LLC; M-Class Mining, LLC; Viking Mining, LLC; Foresight Energy Labor, LLC; Coal Field Construction Company, LLC; and Adena Resources, LLC—appeal the April 18, 2023, order of the circuit court of Franklin County that denied their motion to dismiss pursuant to section

1

2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2022)) or, in the alternative, to compel arbitration and stay the proceedings. For the reasons that follow, we reverse.

¶ 2                                    I. BACKGROUND

¶ 3    On January 6, 2023, the plaintiff, Dennis Clark, filed a complaint against the defendants. Count I alleged negligence against all defendants, count II alleged nuisance against all defendants, count III alleged trespass against all defendants, and count IV alleged strict liability due to ultrahazardous activity as to all defendants.

¶ 4    The complaint alleged that all defendants owned, operated, oversaw, financed, managed, and/or provided services to the Sugar Camp Energy Mining Complex (Complex). The Complex consists of two longwall mines—the MC #1 Mine located in Thompsonville, Illinois, and the Viking Mine located in Macedonia, Illinois—and the M-Class Preparation Plant located in Macedonia, Illinois. On or about August 14, 2021, a fire started underground at the MC #1 Mine. The defendants used firefighting foam containing per- and polyfluoroalkyl substances (PFAS) to extinguish the underground fire.

¶ 5    The complaint alleged that the plaintiff owns real property in Macedonia, Illinois, that has an active farming operation including livestock. The plaintiff's farm is located approximately one-quarter of a mile from where the PFAS were used. The plaintiff alleged that, in September 2021, he noticed an upwelling of water on his farm where no such spring had previously existed. He further alleged that the upwelled water contained a metallic sheen or film that did not freeze during cold weather and was located in a livestock pasture area. In November 2021, several animals pastured in the area with the upwelled water died, including one herd bull, four cows, one calf, and four sheep. Additionally, a dog that began to feed off one of the dead sheep subsequently became ill.

2

¶ 6    The complaint alleged that the plaintiff has suffered the following damages as a result of the negligence of defendants in using PFAS:

"a) Loss of portions of his livestock from their deaths after drinking this contaminated water or consuming vegetation affected by this contaminated water;

b) Loss of portions of his livestock from chronic illness as a result of drinking this contaminated water or consuming vegetation affected by this contaminated water;

c) Having to condemn portions of his livestock herd which are now unsuitable for use for human consumption as a result of ingestion of these contaminants;

d) Future losses of livestock to death, chronic illness, and/or condemnation as a result of drinking this contaminated water or consuming vegetation affected by this contaminated water;

e) Present and future loss to the value of his real property as a result of his lands and waters being exposed to these contaminants;

f) Present and future loss of the use and enjoyment of the affected real property and its waters;

g) Costs incurred to investigate and to determine the conditions of his livestock, and to determine the type and source of contamination and the cause of those animals' conditions or death, including but not limited to veterinary bills, both past and future;

h) Costs incurred to investigate and to determine the conditions of his land and water, and to determine the type and source of contamination and the cause of this contamination to his land, both past and future."

The plaintiff also alleged that the contamination constituted a substantial invasion upon his interest in the use and enjoyment of his land, that the contamination constituted a physical invasion of his property, and that the use of the PFAS firefighting foam was an ultrahazardous activity.

¶ 7    On February 7, 2023, the defendants moved to dismiss the complaint or, in the alternative, to compel arbitration and stay the proceedings pursuant to the "Waiver and Release" because the defendants alleged that the plaintiff had previously agreed to arbitrate disputes, such as those alleged in the complaint. The motion was supported by a verification of Lee Landon, a copy of the executed "Waiver and Release," and a copy of the recorded "Memorandum of Waiver and Release."

¶ 8    The defendants alleged that on July 30, 2019, the plaintiff and his wife executed a waiver and release in favor of Sugar Camp Energy, LLC, and any other related entities, and their respective agents, employees, and contractors. The "Waiver and Release" contains the following relevant provisions:

"WHEREAS, Released Parties have conducted or will conduct mining operations underlying Premises owned by Releasor, to-wit:

* * *

WHEREAS, Releasor have elected to receive cash in lieu of repair or replacement to structures and facilities for material damages caused by Releasee's mining operations.

NOW, THEREFORE, for and in consideration of the payment of the sum of Two Hundred Ninety Thousand Dollars and Zero Cents ($290,000.00) by Releasee to Releasor, Releasor do hereby agree as follows:

Releasor hereby releases, waives and forever discharges the Released Parties from any and all claims of any sort or nature whatsoever, known or unknown, past, present or

4

future, in any way related to or caused by Releasee's past, present or future mining activities in or associated with the Herrin No. 6 coal seam. The claims released include, but are not limited to, claims for subsidence damage, nuisance, trespass, property damage, personal injury, and include damage to personal property, improvements, facilities, wells, ponds, or other structures and improvements located on the foregoing Premises. This Release is given by reason of the election of Releasor to receive cash compensation in lieu of repair or replacement of material damage caused by Releasee's mining operations on the Premises.

* * *

Any dispute regarding the matters set forth herein or disputes of any sort or nature whatsoever arising out of this Waiver and Release shall be determined by arbitration. Each party shall select a competent and disinterested arbitrator having expertise in the area of the dispute and the two arbitrators so selected shall select a third arbitrator. Each party shall bear the expense of the arbitrator he selects and the parties shall bear equally the cost of the third arbitrator. The arbitrators shall inspect and evaluate the damage and shall render their opinion thereon. The decision of at least two of the arbitrators shall be decisive. The decision so rendered shall be binding on the parties and payment, if any, shall be promptly made by Releasee or Releasor as the case may be. The party receiving payment, his heirs and assigns, shall execute a release for said damage, if requested. The manner of ascertainment of disputes provided for herein shall be exclusive and the parties hereby waive any and all other remedies. If the parties fail to appoint arbitrators as provided for herein or if the arbitrators appointed by the parties are unable to agree upon a third arbitrator, then an arbitrator shall be appointed by the American Arbitration Association.

5

* * *

The Release shall be construed in accordance with the laws of the State of Illinois."
The defendants argued a valid arbitration clause existed within the Waiver and Release agreed to by the plaintiff and the defendants and the issues in dispute are within the scope of the arbitration agreement, so the circuit court should order the parties to arbitration.

¶ 9 On March 16, 2023, the plaintiff filed his response in opposition to the motion to dismiss or compel arbitration and stay. The plaintiff argued that the United States Arbitration Act, commonly known as the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2018)), should apply to an arbitration clause "contained in a contract involving interstate commerce." The plaintiff argued that, under the FAA, the circuit court should determine whether the claims set forth in his compliant were arbitrable. Additionally, the plaintiff argued that the Waiver and Release executed in 2019 did not include his unknown future claims that arose in 2021 and thus are not captured by the arbitration clause. Alternatively, the plaintiff argued that the claims set forth in his complaint are not subject to the arbitration clause because the claims did not arise out of or relate to the defendants' "mining activities."

¶ 10 On March 22, 2023, the defendants filed their reply in support of their motion. The defendants argued that future claims are subject to arbitration in Illinois, that the plaintiff's claims are subject to the scope of the arbitration clause, and that the claims are related to the defendants' "mining operations" and/or "mining activities."

¶ 11 On March 24, 2023, the circuit court held a hearing on the defendants' motion to dismiss or, in the alternative, to compel arbitration and stay. A transcript of this proceeding is not contained within the record on appeal.

¶ 12 On March 29, 2023, the plaintiff filed his own affidavit. The affidavit asserted, *inter alia*:

6

"4) The notion never occurred to the undersigned, Dennis Clark, that he was waiving or giving up any claims he might have in the future to damages to his farmland or the water on or under his land, or to the value of his land, or to the safety of his livestock, by the coal company using firefighting foam containing PFAS (he did not know what 'PFAS' was in 2019) to put out underground fires and allowing those contaminants to spread onto his lands and into his water, in violation of environmental law."

¶ 13    On April 18, 2023, the circuit court entered the following order via docket entry:

"The Court has considered Defendants' Section 5/2-619 Motion to Dismiss Or, In the Alternative to Compel Arbitration, Plaintiff's Response thereto and all arguments for and against both written and oral and the Court is otherwise fully advised in the premises. Now therefore the Court finds that the dispute arising out of the Defendant's [*sic*] conduct in 2021 was not encompassed by the 2019 release and therefore also not encompassed by the Release's arbitration clause. Therefore, Defendant's [*sic*] 5/2-619 Motion to Dismiss or, In the Alternative to Compel Arbitration is hereby denied. No written order. Clerk to send a copy of this docket order to all attorneys of record."

The defendants filed a timely notice of interlocutory appeal on May 5, 2023.

¶ 14                              II. ANALYSIS

¶ 15                      A. Illinois Law or Federal Law

¶ 16    As a threshold matter, the parties dispute the applicable law that should be applied. The plaintiff contends that the FAA should apply to determine arbitrability because the arbitration clause is contained in the "Waiver and Release," which involves interstate commerce. Under the

7

FAA, it is for the circuit court to decide whether the parties agreed to arbitrate a particular dispute. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649-50 (1986).

¶ 17    The defendants contend that Illinois law should apply. Under Illinois law, when determining whether the parties agreed to arbitrate the dispute, the circuit court is to use a three-pronged approach:

> "(i) if it is clear that the dispute falls within the scope of the arbitration clause or agreement, the court must compel arbitration, (ii) if it is clear that the dispute does not fall within the arbitration clause or agreement, the court must deny the motion to compel, and (iii) if it is unclear or ambiguous whether the dispute falls within the scope of the arbitration clause, the matter should be referred to the arbitrator to decide arbitrability." *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 24.

¶ 18    Typically, when an arbitration clause is contained in a contract involving interstate commerce, federal law preempts state statutes even in state courts. *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 225 (2008). However, if the contract involving interstate commerce contains a choice of law clause, that agreement by the parties as to the law to be applied will be enforced. *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1190-91 (2000). The "Waiver and Release" contains a choice of law clause that states, "The Release shall be construed in accordance with the laws of the State of Illinois." Therefore, after reviewing the "Waiver and Release" as a whole, we find the choice of law clause to work in conjunction with the arbitration clause to reflect an agreement by the parties to arbitrate in accordance with Illinois law.

¶ 19                           B. Scope of the Arbitration Clause

¶ 20    The primary issue on appeal is whether the arbitration clause contained in the "Waiver and Release" encompasses the claims set forth by plaintiff in his complaint, so that the parties should be compelled to arbitrate. The parties do not dispute that an arbitration clause is included in the "Waiver and Release," nor is there an allegation that the arbitration clause is invalid or unenforceable.

¶ 21    A trial court's order granting or denying a motion to compel arbitration that was made without an evidentiary hearing and raises only a legal issue is reviewed *de novo*. *Guarantee Trust Life Insurance Co. v. Platinum Supplemental Insurance, Inc.*, 2016 IL App (1st) 161612, ¶ 25. Upon review of the record, it is apparent that no evidentiary hearing was held and the circuit court's decision was based solely on legal analysis. Therefore, our review is *de novo*.

¶ 22    A motion to compel arbitration raises the sole and narrow issues of whether the parties agreed to arbitrate the dispute. *Liu*, 2019 IL App (1st) 182645, ¶ 24 (citing *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 444, 449 (1988)). When presented with a motion to compel arbitration, the circuit court's inquiry is limited to whether the parties have a valid arbitration clause. If the parties do have a valid arbitration clause, the question is whether the issues in dispute fall within the scope of the arbitration clause. *Hartz v. Brehm Preparatory School, Inc.*, 2021 IL App (5th) 190327, ¶ 42.

¶ 23    Illinois considers arbitration to be a favored method of dispute resolution. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). However, arbitration is still a matter of contract and parties are "bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language." *Id.* Their "agreement will not be extended by construction or implication." *Id.*

9

¶ 24    The primary objective in interpreting any contract, including an arbitration agreement and a release, is to give effect to the intent of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). The language of the contract alone, given its plain and ordinary meaning, is the best indication of the parties' intent. *Id.* at 233. A "contract must be construed as a whole, viewing each part in light of the others." *Id.* The intention of the parties may not be gathered from detached portions of the contract or from any clause or provision standing alone. *Id.* The interpretation of a contract is reviewed *de novo*. *Id.* at 219.

¶ 25    "[P]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate." *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94 (1968). Generic arbitration clauses are an exception to the "clear language" principle. *Keeley & Sons, Inc. v. Zurich American Insurance Co.*, 409 Ill. App. 3d 515, 520 (2011). "[C]ourts have generally construed 'generic' arbitration clauses broadly" and have concluded that "parties are obligated to arbitrate *any* dispute that arguably arises under an agreement containing a 'generic' provision." (Emphasis in original.) *Fahlstrom v. Jones*, 2011 IL App (1st) 103318, ¶ 17.

¶ 26    A generic arbitration clause is nonspecific in designating what issues should be arbitrated and is characterized by language providing that all claims "arising out of" or "relating to" the contract shall be decided by arbitration. *Liu*, 2019 IL App (1st) 182645, ¶ 26. "To determine the scope of a generic arbitration clause, a court should examine the wording of the clause along with the terms of the contract in which the clause is found." *Keeley & Sons, Inc.*, 409 Ill. App. 3d at 520-21. If

> "an arbitration clause contains the phrase, 'arising out of [the] agreement' (or a similar phrase), but fails to also include the phrase, 'or relating to [the agreement]' (or a similar phrase), it is narrower than a generic clause, and any arbitration should be limited to the

10

specific terms of the contract or agreement containing the arbitration clause." *Liu*, 2019 IL App (1st) 182645, ¶ 26.

¶ 27    The arbitration clause at issue in this case states, "Any dispute *regarding the matters set forth herein* or disputes of any sort or nature whatsoever *arising out of this Waiver and Release* shall be determined by arbitration." (Emphases added.) The arbitration clause contains the "arising out of" language and it also contains "regarding the matters set forth herein"—a variation of the "relating to" language. Accordingly, the arbitration clause at issue here is a generic arbitration clause and any dispute that even arguably arises from the Waiver and Release must be arbitrated.

¶ 28    The claims and damages alleged in the plaintiff's complaint (nuisance, trespass, and property damage) fall within the scope of the Waiver and Release and the generic arbitration clause. Whether the Waiver and Release forecloses recovery for the plaintiff's claims is for the arbitrators to decide.

¶ 29                                 III. CONCLUSION

¶ 30    Therefore, based on the foregoing, we reverse the circuit court's order denying the motion to compel arbitration and remand with directions to grant defendants' motion to compel arbitration and stay the proceedings pursuant to section 3 of the FAA (9 U.S.C. § 3 (2018)).

¶ 31    Reversed and remanded.

*Clark v. Foresight Energy, LLC*, 2023 IL App (5th) 230346

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Franklin County, No. 23-LA-1; the Hon. Eric J. Dirnbeck, Judge, presiding. |
| **Attorneys for Appellant:** | G. Patrick Murphy and Patricia S. Murphy, of Murphy & Murphy LLC, of Marion, and Jeffrey R. Baron and Joshua I. Hammack, of Bailey & Glasser LLP, of Webster Groves, Missouri, for appellants. |
| **Attorneys for Appellee:** | Thomas J. Lech, Jennifer M. Wagner, Kevin P. Green, and Daniel S. Levy, of Goldenberg Heller & Antognoli, P.C., of Edwardsville, and Douglas N. Dorris, of Howerton, Dorris, Stone & Lambert, of Marion, for appellee. |