2025 IL App (1st) 250706

No. 1-25-0706

Filed August 27, 2025

Third Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SLAVICA MORRIS, on Behalf of Herself and All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22 CH 5422 |
| TRUEACCORD, INC., and PINNACLE CREDIT SERVICES, LLC., | ) ) ) | Honorable David B. Atkins, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1     TrueAccord, Inc. (TrueAccord), and Pinnacle Credit Services, LLC (Pinnacle), appeal the circuit court's order denying their motion to compel arbitration. We affirm.[1]

¶ 2                    I. BACKGROUND

¶ 3     Slavica Morris received an e-mail from TrueAccord in 2022 with the subject: "Slavica, we've been reaching out to you. We have an offer for you." The body of the message read as follows:

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

"Today's a new day, pay $274.00 instead of the full balance

\*\*\*

The balance owed to Pinnacle Credit Services, LLC (current creditor of your original Verizon Wireless account) $685.02. If you accept this offer, it means you would save $411.02 and still resolve your account.

If this offer works for you- great! Simply use the button below to make the payment through our website."

Below that text, the message contained these statements: "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." Further below, the message stated:

"The law limits how long you can be sued on a debt. Because of the age of your debt, Pinnacle Credit Services, LLC cannot sue you for it. Please note that making a payment on a time-barred debt has the potential to restart the statute of limitations for suit on the debt."

¶ 4    A few months later, Morris filed this putative class action suit against TrueAccord and Pinnacle, alleging they violated the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 *et seq.* (2018)), by failing to provide clear and conspicuous instructions for opting out of future e-mail communications.

¶ 5    After filing answers, the defendants jointly filed a motion to compel arbitration. The motion and its supporting documents indicated that Morris opened an account with Verizon Wireless (Verizon) for mobile phone service in 2007. The account was terminated in 2008 due to delinquency in payments. Verizon charged off the account in 2009 and Verizon sold Morris's account to Pinnacle in 2011.[2]

---

[2]"Charge off" is an accounting term meaning to deem an account receivable as uncollectable and a loss in financial reporting. Black's Law Dictionary 227 (7th ed. 1999).

¶ 6 Morris's agreement with Verizon contained an arbitration provision. In relevant part, the provision stated: "You and Verizon Wireless both agree to resolve disputes only by arbitration or in small claims court. *** Except for small claims court cases that qualify, any dispute that results from this agreement or from Services you receive from us *** will be resolved by [arbitration]."

¶ 7 The trial court determined that the arbitration provision did not apply to Morris's FDCPA claim and denied the defendants' motion to compel arbitration. The defendants filed this interlocutory appeal.

¶ 8                                     II. ANALYSIS

¶ 9 An order granting or denying a motion to compel arbitration is injunctive in nature and, thus, appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 14. Our review is *de novo*. *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 20. We may affirm on any grounds supported by the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25.

¶ 10 When presented with a motion to compel arbitration, our inquiry is limited to (1) whether the parties have a valid written agreement to arbitrate and (2) if so, whether the issues in the dispute fall within the scope of the arbitration agreement. *Clark v. Foresight Energy, LLC*, 2023 IL App (5th) 230346, ¶ 22. The party seeking to compel arbitration bears the burden to establish both that a valid arbitration agreement exists and that the controversy falls within its scope. *Sturgill*, 2016 IL App (5th) 140380, ¶ 22. The validity of the arbitration agreement is not disputed here. Nor does Morris challenge Pinnacle's ability to invoke it as an assignee of Verizon or TrueAccord's as an

agent of Pinnacle. The only matter in dispute is whether the controversy falls within the scope of the arbitration agreement.

¶ 11     An agreement to arbitrate is a matter of contract. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001).

¶ 12     " '[P]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate.' " *Clark*, 2023 IL App (5th) 230346, ¶ 25 (quoting *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94 (1968)). Arbitration agreements will not be extended by construction or implication. *Salsitz*, 198 Ill. 2d at 13.

¶ 13     Generic arbitration clauses are construed broadly, applying to any dispute arguably arising under the agreement. *Fahlstrom v. Jones*, 2011 IL App (1st) 103318, ¶ 17. A generic arbitration clause is nonspecific in designating what issues should be arbitrated and is characterized by language providing that all claims "arising out of" or "relating to" the contract shall be decided by arbitration. *Liu v. Four Seasons Hotel, Ltd.*, 2019 IL App (1st) 182645, ¶ 26.

¶ 14     The arbitration clause here is generic, as it obliges the parties to arbitrate "any dispute that results from this agreement." Although worded differently, we find its scope is as broad as arbitration clauses covering all claims "arising out of" a contract. "Results from" is synonymous with "arises from" or "arising out of." "Arise" is a synonym for "result" when used as meaning "to follow," the sense applicable here. See Merriam-Webster Online Thesaurus, https://www.merriam-webster.com/thesaurus/result (last visited Aug. 21, 2025) [https://perma.cc/HMX8-BZMZ]. Thus, the parties' agreement to arbitrate "any dispute that results from" the Verizon agreement has the same meaning as being obliged to arbitrate any dispute arising from the agreement. See *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 498 (2002) (finding an arbitration clause generic since "regarding this agreement" was similarly broad as "arising from" or "related to").

¶ 15 Defendants cite several federal district court decisions finding that FDCPA claims arose from contracts with generic arbitration clauses. See, *e.g.*, *Oyola v. Midland Funding, LLC*, 295 F. Supp. 3d 14, 19 (D. Mass. 2018). Those courts reasoned the FDCPA claim arose from the parties' contract because the claimed debt was incurred on the account accompanying their agreement. See, *e.g.*, *Hauptman v. Midland Credit Management, Inc.*, No. 1:18-cv-976, 2019 WL 8436961, at *2 (N.D. Ill. Jan. 31, 2019). Lower federal court decisions, however, are not binding on this court, but may be considered as persuasive authority. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 34. We are not persuaded to follow those decisions, since the issue here is fundamentally a matter of state law—contract interpretation—rather than interpretation of a federal statute, where federal court decisions would carry more weight. *Id.* Further, the federal decisions were cursory, generally resolving the question in a single sentence without reference to any legal authority as to how to interpret whether a dispute arose from a contract. See, *e.g.*, *Hauptman*, 2019 WL 8436961, at *2 ("Since this dispute arises 'from or related to' the Hauptman Account and Defendants are the present owner of that account, it is within the scope of the arbitration clause."); *Stockman v. Midland Credit Management, Inc.*, No. 21-cv-5396, 2022 WL 1499811, at *7 (N.D. Ill. May 12, 2022) ("[B]ecause her FDCPA claim 'arises from or relates to' her failure to pay the Account, it falls within the scope of the arbitration provision.").

¶ 16 Courts often consider whether a claim arose from a contract when a defendant seeks to compel arbitration for tort claims. See, *e.g.*, *Bass*, 328 Ill. App. 3d 492. The claim's factual allegations determine its arbitrability, not its label. *Id.* at 499. "A tort claim is considered as 'arising out of or relating to' a contract if it, at a minimum, raises some issue the resolution of which requires reference to or construction of some portion of the contract itself." 21 Williston on Contracts § 57:31 (4th ed. May 2025 Update).

¶ 17 Here, Morris alleges the defendants violated the FDCPA. FDCPA claims are akin to torts. *Dotson v. AWA Collections*, Nos. 22-6078 & 22-6096, 2023 WL 3055574, at *4 (10th Cir. April 24, 2023). The elements of an FDCPA claim are: (1) the plaintiff is a "consumer" as defined by the FDCPA; (2) the debt arose out of transactions for personal, family, or household purposes; (3) the defendant is a "debt collector" as defined by the FDCPA; and (4) the defendant violated a prohibition of the FDCPA. *Bauman v. Bank of America, N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015).

¶ 18 The defendants argue that Morris's complaint refers to the Verizon agreement because she alleges that they sent her a communication regarding an attempt to collect a debt incurred under that agreement. Moreover, there would be no reason for the communication but for the existence of the Verizon agreement. We find these considerations insufficient. "The required relationship between the dispute and the contract does not exist simply because the dispute would not have arisen absent the existence of the contract between the parties." 21 Williston on Contracts § 57:31 (4th ed. May 2025 Update). The focus of an FDCPA claim is the use of unfair methods to collect a debt. *Bauman*, 808 F.3d at 1102. The defendants owed a duty to everyone to refrain from such methods. Morris's protection derives from the FDCPA, not a right created by her agreement with Verizon. Moreover, whether Morris owed the debt is irrelevant to the resolution of her claim. A cognizable FDCPA requires only an alleged debt. See 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation or alleged obligation"). TrueAccord's e-mail itself establishes an alleged debt. Thus, resolution of Morris's FDCPA claim will not require reference to or construction of the Verizon agreement.

¶ 19 It is also relevant that Morris's claim is based on an occurrence that took place long after her agreement with Verizon terminated. The United States Supreme Court's decision in *Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190 (1991), cited by

Morris, provides guidance on determining whether an arbitration clause applies to disputes brought after a contract's expiration. In *Litton*, the Court noted that "[t]he object of an arbitration clause is to implement a contract, not to transcend it." *Id.* at 205. Thus, a dispute arises under an expired contract only when it has its "real source in the contract." *Id.* The arbitration provision applies when (1) the dispute involves facts and occurrences that arose before expiration, (2) an action taken after expiration infringes a right that accrued or vested under the agreement, or (3) under normal principles of contract interpretation, a disputed contractual right survives expiration of the remainder of the agreement. *Id.* at 206. Our supreme court has cited *Litton* when considering whether contractual terms apply after termination. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 78.

¶ 20    None of the circumstances stated in *Litton* are present here. As noted, Morris's alleged debt is not involved in the dispute, since the validity of the debt is not at issue. The claim does not concern an action that infringed a right that accrued or vested under the Verizon agreement. And no contractual right is disputed. Instead, the real source of the dispute—whether the defendants violated the FDCPA—is the e-mail communication sent in 2022, more than a decade following the agreement's termination. Thus, requiring the parties to arbitrate this claim would transcend the Verizon agreement, not implement it.

¶ 21    For these reasons, we find the claim here is not a dispute resulting from the Verizon agreement and, therefore, is not within the scope of the arbitration provision.

¶ 22                                III. CONCLUSION

¶ 23    Based on the foregoing, we affirm the judgment of the circuit court.

¶ 24    Affirmed.

***Morris v. TrueAccord, Inc.*, 2025 IL App (1st) 250706**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-5422; the Hon. David B. Atkins, Judge, presiding. |
| **Attorneys for Appellant:** | Nabil G. Foster, of Barron & Newburger PC, of Chicago, and Luke K. Chamberlain, of Messer Strickler Burnette, Ltd., of Barrington, for appellants. |
| **Attorneys for Appellee:** | Michael Drew, of Neighborhood Legal, LLC, of Chicago, for appellee. |